**Felix C. STRINGFELLOW, Appellant,**

v.

**Major Robert PERRY, Larry Norris, Warden, Maximum Security Unit A.D.C., Appellees.**

No. 88–1929.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 28, 1988.

Decided March 15, 1989.

Felix C. Stringfellow, Tucker, Ark., pro se.

Theodore Holder, Asst. Atty. Gen., Little Rock, Ark., for appellees.

Before BOWMAN and BEAM, Circuit Judges, and HEANEY,* Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

Felix C. Stringfellow, an inmate at the Tucker Maximum Security Unit of the Arkansas Department of Correction, appeals from the district court order dismissing his 42 U.S.C. § 1983 action. Stringfellow claimed his due process rights were violated when he was placed on investigative status [1] for thirty-five days. We affirm.

On October 27, 1987, Stringfellow was transferred from the general population and placed in the administrative segregation unit on investigative status, where he remained until December 1, 1987. He filed a complaint claiming he was not told of the reason for the detention or the suspected charge; he only received three written five-day extensions of his investigative status, none after November 16, 1987; and the Director did not approve his detention beyond thirty days; all of which were in violation of prison regulations. He demanded a jury trial.

Stringfellow subsequently filed motions requesting discovery and appointment of counsel, and filed an amended complaint.

---

* The Honorable Gerald W. Heaney assumed senior status on December 31, 1988.

1. According to a policy memorandum from the Director of Prisons, A.L. Lockhart, dated June 2, 1982, regarding procedures for prisoners on investigative status, "[a]n inmate may be placed on Investigative Status when that inmate has violated or is suspected of violating the rules of the institution and more information is required to determine whether or not disciplinary action should be taken."

Appellees prison officials filed a motion to dismiss for failure to state a claim, which the district court denied. The district court, however, ordered Stringfellow to appear for an evidentiary hearing, together with another inmate with an identical claim, for the purpose of determining whether his case could survive a motion for a directed verdict. The district court denied Stringfellow's motion for appointment of counsel.

At the evidentiary hearing, Stringfellow first complained, as a preliminary matter, that appellees had not responded to his discovery requests. The magistrate told Stringfellow to call appellees as witnesses and ask them the questions directly.

Robert Perry, Chief of Security Major, testified that after he received information that Stringfellow and three other inmates were involved in an extortion-type racket and had threatened to kill another inmate that night, he ordered all four inmates placed in lock down and their cells searched.

Perry explained the prison's policy concerning investigative status as set forth in a policy memorandum which provides:

1. The Shift Supervisor will authorize an inmate's placement on Investigative Status. Within forty-eight (48) hours of the time an inmate is placed on Investigative Status, that inmate must either receive his/her copy of the charges against him/her or a copy of an extension of time signed by the Warden or, in his absence, the Assistant Warden. This time limit does not include the period between 6:00 p.m. Friday and 6:00 a.m. Monday. It is also exclusive of holidays.

2. An inmate on Investigative Status must receive his/her copy of the charges against him within forty-eight (48) hours of the time he is placed on Investigative Status unless an extension of time is granted by the Warden or, in his absence, an Assistant Warden following a review of that inmate's status. A copy of the extension of time shall be given to the inmate. All extensions must state a reason and specify the exact number of working days on the extension form. The extension approved by the Warden or Assistant Warden may not exceed five (5) working days per extension, and must be made for one of the reasons set out below. The Director must approve any extension over thirty (30) calendar days. There are five (5) reasons for granting extensions of time on Investigative Status, and one of these reasons must appear on the extension form. These reasons are as follows:

.    .    .    .    .

e. The case requires more extensive investigation;

Perry testified that five five-day extensions of investigative status were served on Stringfellow. Perry explained that the thirty days had expired during the Thanksgiving holidays and that on November 30, 1987, Perry discussed with Warden Larry Norris taking the inmates off investigative status and splitting them up rather than getting another extension. Norris testified that he signed five extension notices.

Stringfellow testified that he was not told by anyone why he was placed on investigative status, and that he only received extensions through November 16, 1987. He also stated he filed grievances regarding his detention, which went unanswered until after he was released on December 1, 1987.

The magistrate concluded that Stringfellow had a liberty interest in remaining in the general population and not being assigned to investigative status, based on the prison policy which reflects mandatory procedures for such an assignment. He found that there may have been a failure to strictly comply with the procedures in that Stringfellow may not have received all of the extension notices but, at most, this failure amounted to negligence or inadvertence. The magistrate also concluded the regulations for administrative segregation did not apply to investigative status, including a preassignment hearing. The district

court, adopting the magistrate's recommendations, dismissed the complaint.

■ We agree with the district court that Stringfellow had a liberty interest in remaining in the general population based on the prison's policy memorandum. We also agree that the requirements of this policy memorandum were substantially followed in this case.

■ Stringfellow argues appellees did not properly deny one of his claims in their responsive pleading, which Stringfellow asserts was appellees' motion to dismiss, and thus, he is entitled to judgment on this claim. (The claim at issue concerns Stringfellow's assertion that his due process rights were denied when he was not afforded a preassignment hearing.) Appellees filed a general denial answer, pursuant to Federal Rules of Civil Procedure 8(b), after their motion to dismiss had been denied. This answer, not the motion to dismiss, is the responsive pleading, and it adequately addressed all of the claims in the amended complaint.

■ Stringfellow also argues the district court erred in not compelling compliance with his discovery requests when the answers were "imperative to the outcome of the case." District courts are afforded wide discretion in their handling of discovery matters. *Cook v. Kartridg Pak Co.,* 840 F.2d 602, 604 (8th Cir.1988). We have reviewed Stringfellow's requests and find no abuse of discretion. Much of the information Stringfellow requested concerned the details of the investigation, and appellees' compliance with the prison's policies. The court excluded any evidence regarding the investigation on the basis of prison security, and appellees testified at the hearing about prison policy.

Finally, Stringfellow argues the district court erred in not applying the regulations concerning administrative segregation, in particular, the requirement for a preassignment hearing. The administrative segregation regulations, set out in *Hayes v. Lockhart,* 754 F.2d 281, 283 n. 1 (8th Cir.1985) (per curiam), also grant inmates a liberty interest in remaining in the general population, and provide for certain due process protections, including a preassignment hearing. These administrative segregation regulations, however, are not at issue in this case. As noted above, investigative status is controlled by a separate policy memorandum, which provides for different due process protections, including notice of the charges or a limited extension, within forty-eight hours of confinement on investigative status.

■ We are mindful that Stringfellow was subjected to conditions of confinement which were more stringent than were afforded in the general population, particularly with respect to the increased confinement in his cell, and close supervision for other activities.[2] We cannot say, however, that these conditions of confinement during the limited time rose to the level of an eighth amendment violation.

Accordingly, we affirm.

---

2. Inmates on investigative status who are confined in the Maximum Security Segregation Unit may only leave their cells under close supervision for work, recreation and visitation, and must remain in their cells for all other activities. The privileges allowed on investigative status include:
   a. Regular mail privileges;
   b. Regular visiting privileges, except where such visits would endanger the security and safety of the institution;
   c. A minimum of two showers per week;
   d. Exercise and recreation in accordance with institutional schedule;
   e. Authorized commissary items;
   f. Personal items and clothing as issued to the general population or as issued to other prisoners on administrative segregation status including:
      1. State issued clothing;
      2. State issued shoes;
      3. Personal pictures and letters;
      4. Papers, pens, and pencils as approved;
      5. Bedding and linen;
      6. Toilet articles.
   g. Access to reading materials and education materials;
   h. Access to legal and religious materials;
   i. Appointments with appropriate medical professionals when required.