# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 09-2317/09-2357

_____

| | | |
|---|---|---|
| Catherine Ray, individually and on behalf of all others similarly situated, | * * * * | |
| Plaintiff - Appellant/ Cross-Appellee. | * * | Appeals from the United States District Court for the Western District of Arkansas. |
| v. | * * | |
| American Airlines, Inc., | * * | |
| Defendant - Appellee/ Cross-Appellant. | * * | |

_____

Submitted: June 16, 2010
Filed: July 2, 2010

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Catherine Ray, the named plaintiff in a purported class action lawsuit against American Airlines (American), appeals from the district court's[1] order denying her motion for a continuance under Federal Rule of Civil Procedure 56(f) and granting summary judgment in favor of American on her claims for false imprisonment and

_____

[1]The Honorable Robert T. Dawson, United States District Judge for the Western District of Arkansas.

negligence arising from a nine hour tarmac delay. American cross appeals, arguing that Ray's state tort claims are preempted by federal aviation legislation. We affirm.

## I.

Ray and her husband boarded an American flight at six a.m. on December 29, 2006, traveling from Oakland, California to Dallas, Texas. Due to bad weather and a backup of flights in the Dallas area, the flight was diverted to Austin, Texas for refueling. The plane landed around noon at the Austin airport, refueled, began to taxi toward the runway, and then stopped. At that point the pilot informed the passengers that the Dallas airport had been closed as a result of the bad weather and that the plane could not takeoff until it reopened.

About an hour later the pilot announced that a bus would be arriving to take any passengers who wished to deplane to the Austin airport. During her deposition, Ray testified that the pilot recommended that the passengers remain on board as it was likely they would be leaving within the next hour or so. She also testified that the pilot told passengers that if they chose to deplane, they would be "finished with this flight" and would be "on their own." Ray and her husband believed that the pilot meant that passengers who chose to deplane would be required to fund alternate transportation home, although neither asked a member of the flight crew to clarify the pilot's statements. Ray testified that she and her husband chose to remain on the plane when the bus arrived because they did not have enough money to pay for alternate transportation.

After two to three hours on the tarmac the pilot announced that a second bus would be arriving to take any more passengers who wished to proceed to the

terminal.[2]   Ray testified that when the second bus arrived the passengers were instructed, "[t]his is your last chance, if you want to get off, get off now because this is it."  Ray and her husband again chose to remain on the plane.

American provided no further opportunities for passengers to exit the plane for the next six to seven hours.  Ray asserts that during the remaining delay conditions on the plane deteriorated and the air became "stuffy" and "smelly."  Passengers were only given "two or three granola bars" and "two soda pops."  When Ray attempted to use one of the plane's lavatories, it had waste in it and would no longer flush, and there was no water with which to wash her hands.  Ray did not alert any flight crew member of the nonworking lavatory and did not attempt to use another restroom.  Ray also asserts that at one point a male passenger began arguing with a flight attendant and asked to see the pilot.  When the pilot stepped out of the cockpit, the passenger demanded to be taken to a gate.  Ray testified that she was concerned a fist fight would break out.

Around six p.m. the pilot announced that he was no longer able to fly the plane because he had reached his maximum duty hours.  He informed the passengers that he was trying to get the plane to a gate but that there was lightning in the area which had required the ground crews to shut down.  Ray alleges that the lightning ended shortly after the pilot made his announcement.  At nine p.m. the plane was taken to a gate at the Austin airport and the remaining passengers deplaned.  American did not provide passengers with food or lodging vouchers when they initially entered the terminal although the record indicates that some were later distributed.  Many of the passengers, including Ray and her husband, spent the night in the terminal.

---

[2]At oral argument Ray's counsel stated that the second bus arrived four and a half hours into the nine hour delay.  That statement differs from those in the briefs and in the depositions of both Ray and her husband, who stated that the second bus arrived within the first two to three hours.

-3-

The following morning American flew Ray and her husband from Austin to Dallas, where they connected to another flight that day to Tulsa, Oklahoma. Ray testified that on the day after the delay, she experienced "some kind of intestinal stomach irritation" which she attributed to not being able to wash her hands after using the restroom aboard the plane. She did not seek any medical attention for the stomach irritation, which she described as a "24-hour kind of thing."

Ray filed a putative class action against American in Arkansas state court alleging claims for false imprisonment, negligence, intentional infliction of emotional distress, breach of contract, and fraud or deceit. She alleged that the December 29 delay occurred because of American's "intentional or negligent lack of personnel, equipment, and planning for ordinary weather disruptions." She also alleged that American had chosen for its own financial benefit not to allow passengers to deplane after the buses had left.

American removed the case to the Western District of Arkansas and then moved to dismiss all Ray's claims under 12(b)(6), arguing that the claims were preempted by the Airline Deregulation Act (ADA), 49 U.S.C. § 41713, and the Federal Aviation Act (FAA), 49 U.S.C. § 40103. The district court granted the motion to dismiss in part, concluding that the FAA precluded Ray from bringing state law claims based on the airline's decision to reroute the plane for safety and that the ADA preempted any state law claims seeking compensation for meals, lodging, ground transportation, and expenses during delays. Ray's breach of contract and fraud claims were dismissed as preempted. The court concluded, however, that her false imprisonment, emotional distress, and negligence claims were not preempted because they arose from American's actions "after the flight was diverted and on the ground in Austin." American moved for reconsideration, which the court denied.

In October 2008 the district court filed its final scheduling order, which set the discovery deadline for May 20, 2009 giving the parties a seven month discovery

-4-

period. Ray filed a motion for class certification in November 2008. In December 2008 American moved for summary judgment on Ray's remaining false imprisonment, emotional distress, and negligence claims. Ray submitted a response to American's summary judgment motion in January 2009 and concurrently moved for a continuance of its motion, arguing that she had not yet had a reasonable opportunity to obtain the information she needed to defend the summary judgment motion adequately. American opposed the motion for a continuance.

American moved for a temporary stay in February 2009, asking the district court to stay discovery until it ruled on the pending class certification and summary judgment motions. The district court did not grant the motion and discovery proceeded uninterrupted. Also in February 2009 Ray filed a Rule 20 joinder motion seeking to amend her complaint to join as plaintiffs two passengers of other American planes grounded on the same day as hers.

The district court granted summary judgment to American and dismissed Ray's false imprisonment, negligence, and emotional distress claims on April 2, 2009, three months after the motion had been filed and seven weeks before the discovery deadline. In the same memorandum opinion the court denied Ray's motions for continuance and joinder. Ray filed a motion to reconsider which the court denied.

Ray appeals the district court's denial of her motion for a continuance and the adverse grant of summary judgment on her false imprisonment and negligence claims. She also appeals the court's denial of her joinder motion. American cross appeals, challenging the district court's partial denial of its motion to dismiss and arguing that Ray's state law claims are preempted by federal legislation.

II.

Ray first contends that the district court prematurely granted American's motion for summary judgment on her false imprisonment and negligence claims without first ruling on her pending motion for a continuance. A district court's determination that a claim is ripe for summary judgment is reviewed for abuse of discretion, Robinson v. Terex Corp., 439 F.3d 465, 466–67 (8th Cir. 2006), as is the denial of a rule 56(f) motion for a continuance. Elnashar v. Speedway SuperAmerica, LLC, 484 F.3d 1046, 1054 (8th Cir. 2007).[3]

Although discovery does not have to be completed before a district court can grant summary judgment, "summary judgment is proper only after the nonmovant has had adequate time for discovery." In re TMJ Litigation, 113 F.3d 1484, 1490 (8th Cir. 1997). Federal Rule of Civil Procedure 56(f) allows a party opposing summary judgment to request the court postpone a decision until adequate discovery is completed. To obtain a Rule 56(f) continuance, the party opposing summary judgment must file an affidavit "affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." Humphreys v. Roche Biomedical Lab., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993).

American filed a motion for summary judgment on Ray's false imprisonment and negligence claims two months into the parties' discovery period. Alongside her answer to the motion, Ray filed a Rule 56(f) motion for a continuance arguing that she

_____

[3]Ray argues that it was per se procedural error for the court to rule on American's summary judgment motion without first ruling on her Rule 56(f) motion. See Doe v. Abington Friends Sch., 480 F.3d 252, 257 (3d Cir. 2007). Our case law does not support such a rule. See Iverson v. Johnson Gas Appliance Co., 172 F.3d 524, 529–31 (8th Cir. 1999) (reviewing for abuse of discretion a court's denial of a Rule 56(f) motion after granting summary judgment).

had not yet had adequate time to conduct discovery. Her accompanying affidavit stated that American had not yet responded to her interrogatories or notices to produce, that the United States Department of Transportation (DOT) had not yet responded to her information requests, and that she had not yet been able to depose any of American's employees or passengers. The affidavit also contained a lengthy list of facts that Ray asserted could be developed through further discovery.

The district court denied Ray's motion for a continuance, concluding that the additional information Ray claimed she needed to discover was not relevant to the grounds for American's summary judgment motion. Based on the record, we cannot conclude that the district court abused its discretion in so deciding. American's summary judgment motion was based solely on the deposition testimony of Ray and her husband. With respect to Ray's false imprisonment claim, American relied upon Ray's undisputed testimony that she declined two opportunities to deplane during the delay, that she never told any member of the flight crew that she wished to get off the plane, and that she had failed to present any rule or regulation making American's actions unlawful. American asserted that these facts were fatal to Ray's false imprisonment claim. With respect to her negligence claim, American relied on Ray's deposition testimony that she had suffered no physical injury as a result of the tarmac delay. Because physical injury is a required element for a negligence claim under Texas law, Verinakis v. Med. Profiles, Inc., 987 S.W.2d 90, 95 (Tex. App. 1998), American argued that Ray's negligence claim also failed.

Although Ray's affidavit contained a lengthy list of facts sought to be discovered, she failed to articulate how those facts were relevant "to rebut the movant's showing of the absence of a genuine issue of fact." Humphreys, 990 F.2d at 1081. The facts listed in Ray's affidavit related to American's actions generally with respect to the December 29 delays, but they did not pertain to her individual claims and to the undisputed facts presented in American's motion for summary judgment on those claims. Such a showing is not sufficient under Rule 56(f). Id.

Furthermore, the district court did not grant American's motion for summary judgment until April 2009, three months after the motion was filed and two and a half months after Ray filed her motion for a continuance. Discovery continued throughout the intervening months. At the time the court granted summary judgment, the parties had had more than five months of discovery. Ray did not submit any motion to compel during the intervening period to suggest that she was not receiving the discovery requested and she made no attempt to supplement her summary judgment response. Based on this record, we conclude that the district court did not abuse its discretion by concluding that Ray's claims were ripe for summary judgment. Robinson, 439 F.3d at 466–67; Elnashar, 484 F.3d at 1054.

III.

Ray argues that even if the district court's denial of her motion for a continuance was not an abuse of discretion, genuine issues of material fact existed in respect to her false imprisonment and negligence claims, making summary judgment inappropriate. We review a grant of summary judgment de novo, affirming if the record shows that there was no genuine issue of material fact and the prevailing party was entitled to judgment as a matter of law. Pro Serv. Auto., LLC v. Lenan Corp., 469 F.3d 1210, 1213 (8th Cir. 2006).

We turn first to Ray's false imprisonment claim. Under Texas law, the elements of a false imprisonment claim are: (1) willful detention, (2) without consent, and (3) without authority of law. Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506 (Tex. 2002). The district court granted summary judgment to American after concluding that Ray could not prove that her detention on the plane was without consent and without authority of law. Ray asserts that she presented sufficient evidence to create issues of material fact on each of these elements.

Whether a plaintiff has consented to her detention is ordinarily a question of fact for the jury unless she has failed to present sufficient evidence for a reasonable jury to conclude that consent was lacking. See Grant v. Stop-N-Go Market of Texas, Inc., 994 S.W.2d 867, 872 (Tex. App. 1999). Ray concedes that American offered passengers two opportunities to leave the plane by bus during the first several hours of the delay. She also concedes that she chose not to take either bus, and that at no point during the delay did she notify the flight crew that she wished to leave the plane. The district court concluded that these facts prevented Ray from satisfying the consent element of her false imprisonment claim.

On appeal Ray presents a number of arguments challenging the court's conclusion in respect to consent. She asserts that her consent was procured through deception, that she was not given a meaningful choice whether to deplane, that she was not required to vocalize her lack of consent, and that American exceeded the scope of her consent. We need not reach these arguments, however, because Ray has failed to present sufficient evidence to show that her detention on American's plane was "without authority of law." Rodriguez, 92 S.W.3d at 506.

Under Texas law the plaintiff bears the burden to "prove the absence of authority" in order to satisfy the final element of a false imprisonment claim. Wal-Mart Stores, Inc. v. Cockrell, 61 S.W.3d 774, 777 (Tex. App. 2001) (citing Sears, Roebuck & Co. v. Castillo, 693 S.W.2d 374, 375 (Tex. 1985)). Ray has not presented any statute or regulation, federal or state, in existence on December 29, 2006 that placed a limit on the number of hours American was permitted to keep passengers aboard one of its airplanes during a delay or that otherwise controlled the conduct Ray alleges forms the basis of her false imprisonment claim.[4] Moreover, American

[4]A DOT rule which provides for the imposition of significant fines for tarmac delays exceeding three hours went into effect in April 2010. See 74 Fed. Reg. 68,983 (December 30, 2009). Ray has not provided the court with any similar or otherwise relevant DOT rule in effect at the time of her delay, nor has this court discovered any.

provided two opportunities to deplane, and the pilot informed the passengers that the second was their last chance to leave the flight.

The only support Ray presents to show that American detained her without authority of law is an appellate decision from the District of Columbia, Abourezk v. New York Airlines, Inc., 895 F.2d 1456 (C.A.D.C. 1990). The plaintiff in Abourezk brought a false imprisonment claim after being grounded in a plane for over three hours. Id. at 1457. The District of Columbia appeals court affirmed the dismissal of the claim after concluding that the plaintiff had failed to show that exigent circumstances existed which necessitated his release from the plane and thus that the airline lacked the legal authority to keep him on the plane. Id. at 1458.

Relying on Abourezk, Ray asserts that an airline lacks legal authority to keep a passenger on a plane if exigent circumstances require the passenger's release. Even if such an "exigent circumstances" rule were established, Ray has failed to present facts to show such circumstances existed in respect to her detention. Ray testified during her deposition that the airplane became "stuffy" and "smelly" during the delay, that passengers only received a few granola bars and sodas, and that one of the lavatories stopped functioning. Ray did not complain of any of this to any member of the flight crew, however. She did not ask for additional food or beverage, did not attempt to see whether another lavatory was working, and did not at any point ask to leave the plane. Moreover, she turned down two opportunities to deplane. In light of such undisputed facts, we conclude that Ray has failed to present sufficient facts to show that American acted "without legal authority" with respect to her detention. Rodriguez, 92 S.W.3d at 506. The district court correctly granted summary judgment to American on Ray's false imprisonment claim.

Ray also challenges the adverse grant of summary judgment on her negligence claim, arguing that she presented sufficient evidence to create a genuine issue of material fact on whether American acted negligently by keeping passengers on the

plane for hours, failing to provide enough food and beverages, allowing the lavatories to become dirty and in disrepair, and delivering passengers to the terminal after all restaurants had closed. To establish a claim for negligence under Texas law, a plaintiff must "establish a duty, a breach of that duty, and damages proximately caused by that breach." Kroger Co. v. Elwood, 197 S.W.3d 793, 794 (Tex. 2006).

If a defendant's conduct violates a contractual obligation rather than a duty independently imposed by law, there can be no claim for negligence under Texas law. DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 105 (Tex. 1999). A contract between the parties may not supersede a claim for negligence, however, if there is a special relationship between the parties. S.W. Bell Tel. Co. v. DeLanney, 809 S.W.2d 493, 494 n.1 (Tex. 1991).

The district court granted summary judgment to American after finding that the airline's "Conditions of Carriage" controlled the company's duties in the event of a lengthy onboard delay. The court thus concluded that Ray was limited to a breach of contract claim against American. American's conditions of carriage provide that:

> In the case of extraordinary events that result in very lengthy onboard delays, American . . . will make every reasonable effort to ensure that essential needs of food (snack bar such as a Nutri-Grain), water, restroom facilities and basic medical assistance are met. We are not responsible for any special, incidental or consequential damages if we do not meet this commitment.

Ray asserts that the conditions of carriage document does not preclude a negligence action because it does not sufficiently detail the rights between the parties. This argument was not presented to the district court and "[o]rdinarily this court will not consider arguments raised for the first time on appeal." Wiser v. Wayne Farms, 411 F.3d 923, 926 (8th Cir. 2005). Moreover, Texas courts have determined that far less specific contracts preclude a negligence action. See, e.g., Abraxas Petroleum

-11-

Corp. v. Hornburg, 20 S.W.3d 741, 753 (Tex. App. 2000) (contract specified that defendant must "conduct all such operations in a good and workmanlike manner"). American's conditions of carriage document spells out in sufficient detail the rights between the airline and its passengers.

Alternatively Ray argues that American as a common carrier owed her a duty above and beyond the conditions of carriage. Under Texas law, a common carrier owes its passengers "the high degree of care that a very cautious, prudent, and competent person would use under the same or similar circumstances." Slentz v. American Airlines, Inc., 817 S.W.2d 366, 369 (Tex. App. 1991). This duty would not likely be applicable here, however, as Texas courts implicating the common carrier duty have done so in the context of protecting passengers from physical injury, see, e.g., Garrett v. American Airlines, Inc., 332 F.2d 939, 943 (5th Cir. 1964); City of Dallas v. Jackson, 450 S.W.2d 62, 63 (Tex. 1970), and Ray has presented little to no evidence that she suffered physical injury because of American's actions.

This absence of physical injury evidence precludes Ray from prevailing on her negligence claim. Under Texas law, a plaintiff in an ordinary negligence claim must show that she suffered physical injury as a result of the defendant's negligent actions. Verinakis, 987 S.W.2d at 95. During her deposition, Ray testified that she had felt mild claustrophobia while on the plane, but that moving to the window seat alleviated those feelings. She also testified that on the day following the delay she had an upset stomach which she attributed to not being able to wash her hands after going to the bathroom on the plane. She did not alert the flight crew of either situation and did not seek any medical treatment.

Citing an Oklahoma state appellate case, Ray asserts that sleep deprivation or "even the pain of hunger" should reach the level of damages required in a negligence action. See Richardson v. J.C. Penney Co., Inc., 649 P.2d 565, 566 (Okla. Civ. App. 1982). The Richardson case is contrary to Texas law. See Verinakis, 987 S.W.2d at

95–96 (holding plaintiff's alleged injuries insufficient where he suffered an isolated incident of becoming physically ill, and generally described having "pain"); Johnson v. Methodist Hosp., 226 S.W.3d 525, 530 (Tex. App. 2006) (same). Ray's allegations of an upset stomach and mild claustrophobia do not rise to the level necessary to support a negligence claim under Texas law. The district court properly granted summary judgment to American on Ray's claim for negligence.

Finally, Ray appeals the district court's denial of her motion to amend her pleadings to join two new plaintiffs. We review an order denying leave to amend a complaint and to join parties for abuse of discretion. Bell v. Allstate Life Ins. Co., 160 F.3d 452, 454 (8th Cir. 1998). When a district court has already filed a final scheduling order, a party seeking to amend her pleadings after the deadline specified in the order must show good cause. Fed. R. Civ. P. 16(b); In re Milk Prods. Antitrust Litig., 195 F.3d 430, 437–38 (8th Cir. 1999). Ray filed her motion to amend two months after the deadline set in the final scheduling order without attempting to show good cause, and she has not developed an argument on appeal concerning good cause. We conclude that the district court did not abuse its discretion in denying Ray's untimely motion to amend and to join parties.

IV.

American has filed a cross appeal, challenging the district court's partial denial of its motion to dismiss. It argues that Ray's false imprisonment and negligence claims are preempted by the ADA and the FAA, and it requests that we affirm the dismissal of Ray's claims on the basis of preemption.

We have not ruled on the scope of the preemptive effect of these statutes as they relate to the provision of airline services to airline passengers, and we note that the circuits which have addressed the issue have come to different conclusions. See, e.g., Air Transport Ass'n of Am., Inc. v. Cuomo, 520 F.3d 218, 223 (2d Cir. 2008)

-13-

(defining the ADA broadly to preempt claims relating to an airline's provision of food, water, electricity, and restrooms during lengthy delays); <u>Charas v. Trans World Airlines, Inc.</u>, 160 F.3d 1259, 1261 (9th Cir. 1998) (defining the ADA's preemption provision narrowly to exclude "the provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities"); <u>Taj Majal Travel, Inc. v. Delta Airlines, Inc.</u>, 164 F.3d 186, 194 (3d Cir. 1998) (concluding that it was unlikely Congress intended to preempt personal injury or tort claims through the ADA). American invites us to address this complex question, but we decline to reach it since it is unnecessary to decide this case.

For the reasons stated we affirm the judgment of the district court.

_____