# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 11-1473

———————

Karen M. Chambers,          *
                                    *

    Plaintiff - Appellant,    *
                                    *   Appeal from the United States

v.                          *   District Court for the
                                    *   District of Minnesota.

The Travelers Companies, Inc.,   *
                                    *

    Defendant - Appellee.    *

———————

Submitted:  October 18, 2011
Filed:  February 9, 2012

———————

Before RILEY, Chief Judge, LOKEN and BENTON, Circuit Judges.

———————

LOKEN, Circuit Judge.

Following her termination in January 2008, Karen M. Chambers commenced this action against her former employer, The Travelers Companies, Inc., which removed the case to federal court. Chambers appeals the district court's[1] grant of summary judgment dismissing her claims for defamation; breach of a unilateral contract to pay a performance bonus; failure to timely pay wages after discharge in violation of Minn. Stat. § 181.13(a); age discrimination; and interference with her rights to employee benefits in violation of § 510 of the Employee Retirement Income

———————

[1]The Honorable Michael J. Davis, Chief Judge of the United States District Court for the District of Minnesota.

Security Act (ERISA), 29 U.S.C. § 1140, and the court's denial of her motion to continue the summary judgment proceedings. Reviewing the grant of summary judgment *de novo*, and the procedural issue for abuse of discretion, we affirm.

## I. The Defamation Claims

Chambers began work for Travelers' predecessor, The St. Paul Companies, in 1987 and stayed on after the two insurers merged in 2004. In 2006, she became a Travelers Managing Director, supervising six underwriters at the St. Paul offices. She reported to Second Vice-President Kurt Werner, located in Dallas, Texas. Werner reported to Homer Sandridge, Vice-President of the Professional Liability group. The Human Resources Manager for the group of underwriters supervised by Chambers was Michele Cady, located at Travelers headquarters in Hartford, Connecticut. Cady reported to the Second Vice-President in charge of human resources for bond and financial products, Gail DeAngelis, also located in Hartford.

On September 14, 2007, an underwriter supervised by Chambers called Michele Cady to complain that Chambers had a controlling management style, brought personal stress to the department, made inappropriate religious comments, and sold religious items in the office. Aware that the complaint might be suspect because this underwriter was on a performance improvement plan to correct work deficiencies, Cady discussed the complaint with DeAngelis, who advised Cady to speak to Jennifer Ames, the Director of Employee Relations. Ames advised Cady to conduct a "climate survey" or "environmental assessment" of the six underwriters supervised by Chambers to determine the merit of the complaint of poor management and low staff morale. Ames provided Cady with a template of neutral questions to ask employees in conducting the survey.

In early October, Cady using Ames's template surveyed the six underwriters about their work environment; the quality of supervision and management styles of

Werner and Chambers; co-worker and management sensitivity to gender, race, age, religion, and employment positions; and in-office solicitations. Comments regarding Texas-based Werner were positive, but most of the six commented negatively regarding Chambers, describing the workplace as "dysfunctional," team morale as low or non-existent, and Chambers' management style as "blame and shame" or "Dr. Jekyll, Mr. Hyde." They also reported that Chambers spoke frequently about religion, and some said she sold items in the office to raise funds for missionary work, which they felt obligated to purchase to avoid getting on her "bad side." Cady compiled her verbatim notes of the survey comments into a report dated October 8, 2007.

On October 10, Werner and Sandridge met with Chambers to obtain her response to the climate survey. Cady participated by telephone. Werner summarized the underwriters' negative comments and invited Chambers' response. She categorically denied the underwriters' characterizations of her performance as Managing Director. The following day, Chambers met with Werner and Sandridge and criticized the survey, angrily asserting that "perception is not reality" and that she "wouldn't tolerate being implicated in harboring fear," and demanding that Werner and Sandridge "make sure this is taken care of." On October 22, Werner delivered to Chambers a "Written Behavioral Warning" noting six areas where she needed to improve: (1) not communicating with staff in a demeaning, angry, or retaliatory manner; (2) not discussing religious or sexual preferences with staff; (3) not soliciting on company property; (4) communicating clearly, concisely, and respectfully; (5) not discussing private or confidential information about employees; and (6) permitting staff greater paid time off flexibility. Werner declined Chambers' request that he identify specific incidents of alleged wrongdoing and who had reported them.

On January 8, 2008, Cady, Sandridge, and Werner met with Chambers to discuss reports that she had taken family members on business trips and had unnecessarily delayed informing employees of a presentation assignment. Chambers acknowledged that her daughter had attended a business dinner or outing in Las

Vegas but did not disclose that her five-year-old grandson also attended. The next day, Travelers learned that Chambers did not report family members' presence on the two expense forms she submitted for the dinner, which included the cost of their food and drinks. Questioned by Travelers, Chambers' staff reported that she had traveled with family members previously, which they considered inappropriate. On January 21, Werner and Cady told Chambers that she was being terminated, effective immediately, because of "continuing issues."

Chambers alleges that Travelers agents defamed her at the October 10 meeting, in the October 22 Written Behavior Warning, and by telling her at the January 21 meeting that she was terminated for "continuing issues." Defamation under Minnesota law requires proof that the alleged defamatory statement (1) was communicated to someone other than the plaintiff, (2) was false, and (3) tended to harm the plaintiff's reputation and lower her in the estimation of the community. Bahr v. Boise Cascade Corp., 766 N.W.2d 910, 919-20 (Minn. 2009). Whether a communication is actionable because it contained a provably false statement of fact is a question of law. McClure v. Am. Family Mut. Ins. Co., 223 F.3d 845, 853 (8th Cir. 2000), citing Geraci v. Eckankar, 526 N.W.2d 391, 397 (Minn. App.), review denied, (Minn. Mar. 14), cert. denied, 516 U.S. 818 (1995). If a plaintiff presents sufficient evidence of these three elements, the defendant may nonetheless be entitled to a qualified privilege that defeats the defamation claim if its statement was "made upon a proper occasion, from a proper motive, and [] based upon reasonable or probable cause." Stuempges v. Parke, Davis & Co., 297 N.W.2d 252, 256-57 (Minn. 1980). "The existence of the privilege is a matter of law for the court." Bahr, 766 N.W.2d at 920.

The district court concluded that the statements made by Travelers agents at the October 10 meeting and in the October 22 Written Behavior Warning were entitled to a qualified privilege. We agree. An underwriter's telephone complaint to Cady gave Travelers reasonable ground to investigate staff morale in the unit managed by

Chambers. Cady surveyed the entire staff and reported the concerns they expressed about Chambers' performance to supervisor Werner, who then summarized the negative comments to Chambers and sought her response. "Communications between an employer's agents made in the course of investigating or punishing employee misconduct are made upon a proper occasion and for a proper purpose, as the employer has an important interest in protecting itself and the public against dishonest or otherwise harmful employees." McBride v. Sears, Roebuck & Co., 235 N.W.2d 371, 374 (Minn. 1975).

"A qualified privilege is abused and therefore lost if the plaintiff demonstrates that the defendant acted with actual malice." Lewis v. Equitable Life Assurance Soc., 389 N.W.2d 876, 890 (Minn. 1986). "It is well-settled in Minnesota that to demonstrate malice in a defamation action the plaintiff must prove that the defendant made the statement from ill will and improper motives, or causelessly and wantonly for the purpose of injuring the plaintiff." Stuempges, 297 N.W.2d at 257. Here, Chambers argues that Travelers lost any privilege through abuse because Cady and Werner did not adequately investigate the truth of the underwriters' defamatory comments before presenting those statements to Chambers as "results" at the October 10 meeting and then reflecting those comments in the October 22 Warning. Although abuse of the privilege is a jury issue, "pointing merely to instances in which [Travelers] might have better conducted the investigation does not provide a basis for a reasonable jury to [find actual malice]." Bahr, 766 N.W.2d at 925. Unlike the employer in Wirig v. Kinney Shoe Corp., 461 N.W.2d 374, 380 (Minn. 1990), on which Chambers relies, Travelers investigated the initial complaint regarding Chambers' managerial deficiencies by surveying each member of her staff before asking Chambers to respond. Though the underwriters' survey responses were not uniformly negative, an employer may act on reports of employee misconduct, even if it receives conflicting reports during its investigation. See Elstrom v. Indep. Sch. Dist. No. 270, 533 N.W.2d 51, 55 (Minn. App. 1995). On this summary judgment record, we agree with the district court that Chambers presented no evidence from

which actual malice or ill will could reasonably be inferred and therefore Travelers was entitled to the qualified privilege as a matter of law.[2]

The district court granted summary judgment on the claim based on the January 21 termination meeting because the statement that Chambers was being terminated for "continuing issues" cannot support a defamation claim because it is "insufficiently precise and cannot be proven false." We agree. This statement was no more specific or verifiable than the statement in McClure that the plaintiff was terminated for "disloyal and disruptive activity." 223 F.3d at 853. Moreover, this is the type of information about an employee discharge that is entitled to the qualified privilege. See Lewis, 389 N.W.2d at 890.

## II. The Breach of Contract and Unpaid Wages Claims

For the year 2006, Travelers advised Chambers that her Total Compensation included a bonus of $32,000. In February 2007, Travelers provided Chambers a Total Compensation Summary for the year that included a bonus of $30,000. On September 26, 2007, prior to Cady's climate survey, Werner provided Chambers a written performance review giving her positive ratings in every performance category. Chambers alleged and argues on appeal that Travelers' failure to pay a $30,000 bonus for her work during 2007 breached a unilateral employment contract that she accepted by her performance. Compare Grenier v. Air Exp. Int'l Corp., 132 F. Supp. 2d 1198, 1199-1200 (D. Minn. 2001). The district court dismissed this claim because, as Chambers admitted in deposition testimony, all Travelers documents

---

[2]We also conclude that the claims relating to the October 10 meeting and to the subsequent Warning fail as a matter of law because the alleged defamatory statements simply repeated other employees' opinions about Chambers, see Longbehn v. City of Moose Lake, 2005 WL 1153625, at *5 (Minn. App. May 17, 2005), and those opinions were "not sufficiently precise or verifiable to support a claim of defamation." McClure, 223 F.3d at 853; see Geraci, 526 N.W.2d at 397.

"clearly state that the awarding of bonuses is within the discretion of Travelers," and Travelers acted within its discretion in determining "that due to her work performance she was not entitled to a bonus in 2007." We agree. "When a contract term leaves a decision to the discretion of one party, that decision is virtually unreviewable." Brozo v. Oracle Corp., 324 F.3d 661, 667 (8th Cir.) (quotation omitted), cert. denied, 540 U.S. 1017 (2003).

Travelers' written Performance Based Compensation Policy expressly provided that bonuses "are discretionary awards used to reward superior performance." Chambers herself had discretion to recommend whether the underwriters she supervised would receive bonuses. Chambers fails to identify any document in the record mandating the payment of performance bonuses. For example, the online Total Compensation Summary to which she refers prominently stated that it was for informational purposes, did not create a contract, and did not alter any existing contract. Moreover, Travelers' policy provided that an employee would be eligible for a bonus only if she was employed on the date bonuses were distributed. Chambers was not employed by Travelers when it paid 2007 bonuses to employees on February 15, 2008. See Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d 848, 854 (8th Cir. 2003) (applying Minnesota law).

Chambers' statutory claim for the non-payment of wages earned prior to discharge was based entirely on Travelers' failure to pay a bonus for her work in 2007. Therefore, this claim is foreclosed by the district court's determination that she was not contractually entitled to that bonus, which we have now affirmed. The employment contract governs whether wages were "actually earned and unpaid" for purposes of Minn. Stat. § 181.13(a). Lee v. Fresenius Med. Care, Inc., 741 N.W.2d 117, 127-28 (Minn. 2007).

### III. The Age Discrimination Claim

Chambers alleged that she was discharged on account of her age in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.08. We analyze MHRA claims using the same standards we apply to claims under the federal Age Discrimination in Employment Act. Lewis v. St. Cloud State Univ., 467 F.3d 1133, 1138 (8th Cir. 2006). One element of Chambers' prima facie case is that she was replaced by a substantially younger employee. Id. at 1136. At the time of her discharge, Chambers was 52 years old and thus a member of the age-protected class. The discharge decision-makers were Sandridge, age 59, and Werner, age 50. After Chambers' discharge, Patty McCarron, a 51-year-old Managing Director in the St. Paul office, assumed Chambers' responsibilities, an expansion of McCarron's responsibilities. Some months later, Travelers perceived that McCarron was spread too thin and hired 44-year-old Brent Rothgeb as "Managing Account Underwriter" of the real estate underwriting group, a position one step below Chambers' former position. Rothgeb then supervised the underwriters but did not have the business strategy function of Managing Directors such as Chambers and McCarron.

In granting summary judgment on this claim, the district court assumed without deciding that Chambers was replaced by a "sufficiently younger" employee to raise an inference of age discrimination. We conclude this cautious assumption was unwarranted. The grant of summary judgment was appropriate because Chambers failed to show that either of her replacements was "sufficiently younger." See Schiltz v. Burlington N. R.R., 115 F.3d 1407, 1412-13 (8th Cir. 1997); accord Morgan v. A.G. Edwards & Sons, Inc., 486 F.3d 1034, 1044-45 (8th Cir. 2007); Grosjean v. First Energy Corp., 349 F.3d 332, 338-39 (6th Cir.) (collecting cases), cert. denied, 541 U.S. 1010 (2003).

The district court concluded that Travelers articulated a non-discriminatory reason for Chambers' discharge -- her performance deficiencies -- and that Chambers

failed to present evidence that this reason was, in fact, a pretext for age discrimination. The court explained, "Chambers has not supplied any evidence, other than her own speculation, that age was a factor in her discharge." We agree this, too, was a proper ground on which to grant summary judgment.

Chambers bore the burden of showing a material question of fact regarding pretext, typically shown by evidence that the employer's "explanation is unworthy because it has no basis in fact," or that "a prohibited reason more likely motivated" the adverse employment action. Torgerson v. City of Rochester, 643 F.3d 1031, 1047 (8th Cir.) (en banc) (quotation omitted), cert denied, 132 S. Ct. 513 (2011). She argues that neither Werner nor Sandridge had ever used the unfair environmental assessment process that undercut her credibility with staff. But that assessment was carried out by human resources professionals, using a previously devised survey, and its results were then reported to Werner and Sandridge for appropriate action. There is no evidence that these decision-makers contemplated terminating Chambers prior to the negative comments by her subordinates. Chambers complains that Travelers did not follow its declared warning policies, but this does not create a reasonable inference that age was the reason for her eventual discharge. See Haas v. Kelly Servs., 409 F.3d 1030, 1036 (8th Cir. 2005). She further complains that Travelers exaggerated her inappropriate conduct at the Las Vegas dinner. But this does not support a claim of pretext because she failed to refute Travelers' conclusion that she inappropriately brought family members to this business function and improperly sought reimbursement for their expenses. Viewing the disputed facts in this voluminous record most favorably to Chambers, we conclude the district court properly granted summary judgment dismissing her age discrimination claim.

### IV. The ERISA Claims

Section 510 of ERISA prohibits the discharge of an employee "for the purpose of interfering with the attainment of any right to which [the employee] may become

entitled under [an employee benefit] plan." 29 U.S.C. § 1140. Chambers appeals the dismissal of her claims that Travelers, by discharging her, wrongfully interfered with her rights under its severance plan and pension benefits plan. The severance plan claim requires little discussion. The Travelers plan expressly provided that an employee discharged for cause is ineligible for severance benefits. Thus, if Chambers was terminated for cause, she had no further rights under the plan. If she was not validly terminated for cause, she had a claim for severance benefits under the plan. In either event, no § 510 "interference" claim will lie.

To prevail on a § 510 claim, Chambers must show that Travelers specifically intended to interfere with her right to plan benefits. See Pendleton v. QuikTrip Corp., 567 F.3d 988, 992 (8th Cir. 2009). To support the claim of interference with her right to future pension benefits, Chambers cites to statements by Travelers following its merger with The St. Paul Companies in 2004 that it intended to save $350M by eliminating 3,000 employees. But that remote statement does not preclude summary judgment because a bona fide reduction-in-force is a legitimate, nondiscriminatory reason for discharge that does not give rise to a § 510 interference claim. Regel v. K-Mart Corp., 190 F.3d 876, 881 (8th Cir. 1999). Moreover, Chambers was terminated for cause years later. She presented no evidence that this specific employment action long after the merger was a pretext for intentional interference with her right to attain pension benefits in addition to those benefits that were vested at the time of her discharge. The district court correctly concluded that Chambers failed to establish a prima facie case of employee benefit plan interference under § 510.

## V. The Procedural Issue

Finally, Chamber argues the district court erred when it denied her motion for a continuance of the pending summary judgment proceedings under Rule 56(f) of the Federal Rules of Civil Procedure. Chambers filed this motion five months after discovery expired, submitting an affidavit broadly requesting receipt of "all relevant

information and documents not timely produced and/or improperly withheld" by Travelers. Rule 56(f) -- recodified "without substantial change" as Rule 56(d) effective December 1, 2010 -- authorizes a district court to defer considering a motion for summary judgment if a party opposing the motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The district court denied the motion to continue, and resolved the summary judgment motion on an extensive discovery record, because Chambers did not identify specific facts that further discovery might uncover and show how those facts would rebut Travelers' showing of the absence of genuine issues of material fact. As this is the standard prescribed by the Rule, there was no abuse of discretion. See Ray v. Am. Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010) (standard of review).

The judgment of the district court is affirmed.

_____