# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3329
_____

Patricia Toben, on behalf of herself and all others similarly situated

*Plaintiff - Appellant*

v.

Bridgestone Retail Operations, LLC, doing business as Firestone Complete Auto Care

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 16, 2014
Filed: May 13, 2014

_____

Before RILEY, Chief Judge, BENTON and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Patricia Toben filed a putative class action against Bridgestone Retail Operations, LLC for violating the Missouri Merchandising Practices Act (MMPA). After limited discovery, Toben moved for class certification. Bridgestone moved for summary judgment. Toben moved to stay summary judgment pending merits discovery. The district court granted summary judgment. Toben appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Bridgestone services cars and sells tires at stores in Missouri. In December 2007, Toben's daughter took Toben's vehicle to Bridgestone for tire replacement. Before service, the daughter signed an itemized estimate of charges, including a $1.20 shop supply fee—6% of total labor charges. The fee was explained on in-store menu boards and placards:

> TO OUR CUSTOMERS
>
> A variety of shop supplies are consumed in servicing our customer's vehicles. Parts and labor necessary for servicing customer's vehicles are itemized on estimates and invoices. However, shop supplies (such as protective items for your vehicle, solvents, cleaners, rags, etc.) do not lend themselves to precise itemization. Therefore, on invoices greater than $30, an additional charge of 6% of the total labor amount, not to exceed $25 will be added to your invoice. This charge represents costs and profits. Non-mandated disposal or recycling charges may also represent costs and profits.

Bridgestone's advertising said: "Shop supply charges in the amount of 6% of labor charges will be added to invoices greater than $30. These charges will not exceed $25 and represent costs and profits." Neither Toben nor her daughter read the fee disclosures or discussed the fee with anyone at Bridgestone. At payment, the daughter signed an invoice which again disclosed the $1.20 shop supply fee.

Toben filed a class-action complaint alleging damages for violation of the MMPA (Count 1) and "money had in received" (Count 2). The crux of her complaint alleged that the shop supply fee is for profit, not supplies. Bridgestone moved to dismiss. The district court denied the motion:

The Court finds that the amended complaint satisfies the heightened pleading requirements of Rule 9(b). Plaintiff alleges that in 2007 she received services to her vehicle at the defendant's facility in Manchester, Missouri. She alleges that the defendant charged her a "shop supply" fee which was not related to any supplies or services provided by defendant. Plaintiff also alleges that the defendant disguised the "shop supply" fee as a legitimate charge for providing supplies to its customers when in fact the fee is the defendant's profit. The Court finds that these allegations sufficiently state the who, what, when, where, and how of defendant's fraudulent conduct. Therefore, Count I will not be dismissed.

Furthermore, plaintiff has properly pled Count II under Rule 8(c). To state a claim for money had and received, plaintiff must allege that (1) the defendant received or obtained possession of the plaintiff's money, (2) the defendant thereby appreciated a benefit, and (3) the defendant's acceptance and retention of the benefit was unjust. . . . Here, plaintiff alleges that the defendant received her money, appreciated a benefit from her payment, and that defendant's retention of the money was unjust in that the fee was misrepresented to plaintiff. Count II will also not be dismissed.

The parties submitted a joint scheduling plan that provided for "discovery related to class certification issues" before Toben's motion for class certification. The plan said: "Parties agree that discovery that relates only to merit issues will not occur prior to a decision regarding class certification." Consistent with the plan, the court issued a "Class Discovery and Certification Case Management Order" for "the class-action discovery and certification phases of this case."

During class discovery, Bridgestone provided information on calculating the shop supply fee and what materials it included:

> INTERROGATORY NO. 8: Explain how you have been determining how much to charge each customer for the Fee during the discovery time period.

**RESPONSE:** Bridgestone Retail objects to this interrogatory on the grounds that is overly broad and unduly burdensome in that it seeks information on charges for each customer and is not limited to the State of Missouri. Without waiver of the foregoing objections, Bridgestone Retail states that when charged the Fee was generally based on 6% of eligible labor charges incurred on service transactions, subject to a maximum charge of $25. Within the State of the Missouri, the threshold for the minimum charges to be subject to the Fee and disclosed on work orders was increased from $30 to $35 in July 2010. The individual fees charged to individual customers also varied. Some, but fewer than all, customers paid the full Fee.

> INTERROGATORY NO. 11: "Identify" any and all materials used in servicing and repair of vehicles that constitute "shop supplies" that have been included in your definition of Fee during the "discovery time period."

**RESPONSE:** Bridgestone Retail objects to this interrogatory as being premature in that it seeks information regarding the merits of this litigation and will not assist in the determination of the class certification issues. Subject to and without waiving the foregoing objection, Bridgestone Retail states there is no exhaustive list or definition of materials that are specifically included in the shop supply fee as understood by Bridgestone Retail. The fee, however, was intended to include items such as: seat covers, steering wheel covers, floor covers, wheel covers, antifreeze, brake fluid, power steering fluid, transmission fluid, lubricants, brake kleen, brake cleaner & degreaser, rust penetrant, carburetor cleaner, plastic cleaner, JD-404 conditioner, brake washer fluid, shock clips, bleeder screws, drain plug gaskets, cotter pins, PVC grommets, hose tees, hose connectors, wire, wire ties, washers, screws, nuts, bolts, carburetor link clips, headlamp screws, wheel bearing grease, parts return bags, moly lube, air conditioning o-rings, a/c refrigerant oil, a/c service port caps, wipes, shop towels, wet start, slider gel lube, instant gasket blue, instant gasket black, instant gasket red, lug nuts standard, lug nuts capped, misc. fasteners, octosorb, acetylene, oxygen, scotch locks, white lube, gasket cement, die electric grease, silicone spray, thread sealer, disc brake shims, gasket sealer, brake silicone lube,

disc brake anti-squeal spray, brake fluid test strips, sanding discs for rotors, grease, anti seize, spray lube, gasket remover, vacuum hose fittings, fuel line fittings, fuel line/ft, tire bead sealer, tire cement, and flat repair supplies. The fee was intended to cover a range of similar items, including but not limited to, substances, materials and small parts consumed or used in automotive servicing.

Bridgestone's corporate representative testified during his deposition:

Q. Tell me your company's position with regard to the purpose of charging that fee since 2006?

A. As is disclosed in the To Our Customers document, I'll just read, it says: A variety of shop supplies are consumed by servicing our customers' vehicles. Parts and labor necessary for servicing customers' vehicles are itemized on estimates and invoices. However, shop supplies, such as protective items for your vehicle, solvents, cleaners, rags do not lend themselves to precise itemization. Therefore, on invoices greater than, in this version, $30, now $35, an additional charge of 6 percent of total labor amount not to exceed $25 is added to the invoice. This charge represents costs and profits. Non-mandated disposal fees, recycling charges may represent costs and profits.

Q. So that's been the purpose of the fee since 2006, right.

A. Correct.

. . . .

Q. Is there a list at your company of what things constitute shop supplies?

A. There is no comprehensive or a total list, that [sic] items used to service vehicles tends to evolve over time; so just some items go in, some items go out. I believe in preparation there was a list provided that covered seat covers, floor covers, nuts, bolts,

acetylene, lubricants, solvents, all those things we refer to as consumables but they're not easily itemized as an item.

Q. Are all shop supplies physical things, things that you can hold in your hand or touch?

A. As I understand them, they would be items that go on the vehicle or service the vehicle. They're part of the transaction. If you can—I guess the exception to that, I don't know if you can touch acetylene or touch oxygen in the tank, but that's part of the consumable [sic] used in the servicing of the vehicle.

Q. Okay. So that is your company's position, correct?

A. That is correct.

Bridgestone objected to several of Toben's interrogatories about costs incurred for materials covered by the shop supply fee and money collected from it.

INTERROGATORY NO. 13: For each year in the "discovery time period," for all of your stores in the state of Missouri in the aggregate, state the amounts of money collected by you in the form of the Fee.

**RESPONSE:** Bridgestone Retail objects to this interrogatory as being premature in that it seeks information regarding the merits of this litigation and will not assist in the determination of the class certification issues.

INTERROGATORY NO. 14: For each year in the "discovery time period," for all of your stores in the state of Missouri, in the aggregate, state the costs incurred by you for materials for which you charged the Fee.

**RESPONSE:** Bridgestone Retail objects to this interrogatory as being premature in that it seeks information regarding the merits of this

litigation and will not assist in the determination of the class certification issues.

Toben moved to compel production of this information, arguing that the court's "Class Discovery and Certification Case Management Order" did not restrict discovery to class certification issues only. Bridgestone opposed the motion, attaching an affidavit from its corporate representative:

> While the shop supplies used on any particular service may vary, under the Bridgestone Retail operating standards every service customer should receive and benefit from some shop supplies. Every vehicle serviced, for example, receives a seat cover and floor cover to assure that the vehicle is kept clean during service. These are single-use items which are discarded after usage. (See Exh. 1 from our service technician training materials). Virtually every vehicle should also receive a top-off of windshield washer fluid, except where the customer has declined the free courtesy inspection in which that would be provided. The other shop supplies used would depend on the specifics of the individual transaction and the service work performed.

The district court denied the motion:

> The parties are engaged in discovery relating to the issue of class certification. On October 10, 2012, plaintiff propounded interrogatories and requests for production on defendant, seeking information and documents relating to the cost of supplies considered to be "shop supplies," the revenue from the shop supplies fee, and the profit generated from that fee.
>
> . . . .
>
> Defendant objects to these interrogatories as premature insofar as they seek information pertaining to the merits of the litigation as opposed to class certification issues. Plaintiff responds that the "Class Discovery and Certification Case Management Order" entered on September 14, 2012 [Doc. #28] does not prohibit merits discovery. . . . The class discovery case management order was preceded by the submission of a

joint proposed scheduling plan in which the parties proposed a schedule for "[d]iscovery related to class certification issues." [Doc. # 26]. Thus, it was clearly the intent of the Court and the parties to limit the initial phase of discovery to class certification issues. The plaintiff's contention that merits discovery is not foreclosed by the case management order is disingenuous. At this stage of the litigation, the parties may conduct discovery to produce information relevant to class certification issues only.

After class discovery, Toben moved for class certification. The same day, Bridgestone moved for summary judgment. On the MMPA claim, Bridgestone argued that: (1) there is no proximate cause because Toben did not review the shop supply fee disclosures before Bridgestone serviced the vehicle; (2) there is no misrepresentation because the fee was adequately disclosed before Bridgestone serviced the vehicle; (3) charging a shop supply fee is not illegal; and (4) Bridgestone's disclosures state that the fee includes a profit, and it is not illegal to make a profit. On the money had and received claim, Bridgestone argued that the fee was disclosed and Toben had sufficient opportunity to object before payment.

Toben moved to stay briefing on summary judgment because she had not conducted merits discovery. She also filed a Rule 56(d) motion, asking the court to stay briefing or allow merits discovery. Through her attorney's affidavit, she requested to: "burrow[] down through [Bridgestone's] official pronouncements" and conduct depositions about the purpose, use, origin, and history of the shop supply fee; "review financial documents relating to the income and expenditures related to 'shop supplies'"; have "full access to all relevant documents" to determine what is a shop supply; obtain "information" on whether the fee is actually related to shop supplies; and have an expert psychologist opine on Bridgestone's disclosures.

The district court denied Toben's motions and granted summary judgment.

II.

A.

Toben contends that the district court erred in denying her Rule 56(d) motion to stay briefing on Bridgestone's summary judgment motion until after merits discovery. Bridgestone claims that Toben's discovery was not relevant to its motion. This court reviews the denial of a Rule 56(d) motion for abuse of discretion. *Marksmeier v. Davie*, 622 F.3d 896, 903 (8th Cir. 2010); *Allen v. Bridgestone/Firestone, Inc.*, 81 F.3d 793, 798 (8th Cir. 1996).

Federal Rule of Civil Procedure 56(d) provides:

> **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
> (1) defer considering the motion or deny it;
> (2) allow time to obtain affidavits or declarations or to take discovery; or
> (3) issue any other appropriate order.

**Fed. R. Civ. P. 56(d)**.[1] "As a general rule, summary judgment is proper 'only after the nonmovant has had adequate time for discovery.'" *Hamilton v. Bangs, McCullen, Butler, Foye & Simmons, L.L.P.*, 687 F.3d 1045, 1049 (8th Cir. 2012), *quoting Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir. 1999). "Nonmovants may request a continuance under Rule 56([d]) until adequate discovery has been completed if they otherwise cannot present facts sufficient to justify their opposition. This option exists to prevent a party from being unfairly thrown out of

---

[1]Fed. R. Civ. P. 56(d) provides the procedure for a nonmovant who is unable to "present facts essential to justify its opposition." This was previously governed under Rule 56(f). *See* **Fed. R. Civ. P. 56 2010 Amendments** ("Subdivision (d) carries forward without substantial change the provisions of former subdivision (f).").

court by a premature motion for summary judgment." *Id.* at 1050, *citing **Celotex Corp. v. Catrett***, 477 U.S. 317, 326 (1986). "To obtain a Rule 56([d]) continuance, the party opposing summary judgment must file an affidavit 'affirmatively demonstrating . . . how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'" ***Ray v. American Airlines, Inc.***, 609 F.3d 917, 923 (8th Cir. 2010), *quoting **Humphreys v. Roche Biomedical Lab., Inc.***, 990 F.2d 1078, 1081 (8th Cir. 1993).

Before the district court granted summary judgment, the parties conducted class discovery. Bridgestone provided evidence about the purpose of the shop supply fee, what constitutes a shop supply, and how Bridgestone uses shop supplies. Bridgestone also conceded, consistent with its customer disclosures, that the fee is intended to generate profit. Bridgestone maintains it has provided all necessary information about the fee. The district court agreed:

> Plaintiff filed an affidavit of her attorney, explaining that discovery is necessary to reveal the purpose of the shop supplies fee. Plaintiff argues that the fee is unrelated to the amount of supplies used in servicing the vehicle, and that, rather than exclusively covering overhead expenses, the fee also generates profit for defendant. Defendant readily admits this to the Court—and to its customers. Defendant's in-store wall signs state:
>
>> TO OUR CUSTOMERS: A variety of shop supplies are consumed in servicing our customer's vehicles. Parts and labor necessary for servicing customer's vehicles are itemized on estimates and invoices. However, shop supplies (such as protective items for your vehicle, solvents, cleaners, rags, etc.) do not lend themselves to precise itemization. Therefore, on invoices greater than $30, an additional charge of 6% of the total labor amount, not to exceed $25 will be added to your invoice. This charge represents costs and profits...

Defendant's print advertising similarly explains: "Shop supply charges in the amount of 6% of labor charges will be added to invoices greater than $30. These charges will not exceed $25 and represent costs and profits." (emphasis added). Finally, customers are given estimates, itemizing the fee, before defendant begins to service their vehicles. The existence and content of these disclosures are undisputed, and confirm that the fee results in profit for defendant. Therefore, plaintiff can require no additional discovery to prove as much.

This finding misconstrues Toben's complaint to allege only that the shop supply fee impermissibly generates profit for Bridgestone. Because Bridgestone discloses that the fee is intended partly for profit, the court found additional discovery unnecessary. Toben also alleges, however, that *no part* of the fee covers costs; it is purely profit. In her complaint, she says: "The Fee constituted profit for Defendant; *no service or parts were provided to Plaintiff in return for paying the Fee*" (emphasis added). The district court summarized Toben's argument similarly in its order denying Bridgestone's motion to dismiss: "Plaintiff alleges that the fee was charged *solely for the purpose of generating profit* for the defendant, as *no service or parts were provided in exchange for the fee* and the fee was not tailored to the cost of supplies used in the repair or services provided to Plaintiff" (emphasis added, internal quotation marks omitted).

Still, the district court did not abuse its wide discretion in denying Toben's Rule 56(d) motion. *See* **Heartland Bank v. Heartland Home Fin., Inc.**, 335 F.3d 810, 815 (8th Cir. 2003) ("We have characterized this review as very deferential and stressed that we will not interfere with the great latitude exercised by the district court in discovery matters.") (internal quotation marks omitted); **Stringfellow v. Perry**, 869 F.2d 1140, 1143 (8th Cir. 1989) ("District courts are afforded wide discretion in their handling of discovery matters."). The party seeking additional discovery must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." **State of Cal., on Behalf**

*of Cal. Dep't of Toxic Subs. Control v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998). *See Chambers v. Travelers Cos., Inc.*, 668 F.3d 559, 568 (8th Cir. 2012).

Toben has set forth some facts she "hope[s] to elicit from further discovery" and has shown how these facts are "essential to resist summary judgment." *Campbell*, 138 F.3d at 779. She has not, however, shown "that the facts sought exist." *Id*. *See Duffy v. Wolle*, 123 F.3d 1026, 1041 (8th Cir. 1997) ("[I]t is well settled that 'Rule 56([d]) does not condone a fishing expedition' where a plaintiff merely hopes to uncover some possible evidence of [unlawful conduct]."), *cert. denied*, 523 U.S. 1137 (1998) (abrogated on other grounds), *quoting Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997); *United States v. C.E. Light*, 766 F.2d 394, 397 (8th Cir. 1985) (the party seeking additional discovery must affirmatively demonstrate how it will allow her "to rebut the movant's showing of the absence of a genuine issue of fact"); **Moore's Federal Practice–Civil**, § 56.102[2] (3d ed. 2013) ("Specific facts sought must be identified. Mere speculation that there is some relevant evidence not yet discovered will never suffice.").

Class discovery revealed relevant information about the shop supply fee. Specifically, Bridgestone identified over 70 examples of shop supplies covered by the fee. Although Toben requests additional discovery to determine if this information is true, she has identified no documents or specific facts she believes would contradict it. *Keebler Co. v. Murray Bakery Prods.*, 866 F.2d 1386, 1389 (Fed. Cir. 1989) ("If all one had to do to obtain a grant of a Rule 56([d]) motion were to allege possession by movant of 'certain information' and 'other evidence', every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files."). Her motion, therefore, fails to show what additional evidence would prove her claim meritorious. *See C.E. Light*, 766 F.2d at 397 ("Rule 56([d]) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious.").

Because the affidavit supporting Toben's Rule 56(d) motion provides only "speculative hope" of finding evidence to support her claim, this court cannot say the district court abused its discretion in denying it. *See Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1566-67 (Fed. Cir. 1987) ("Summary judgment need not be denied merely to satisfy a litigant's speculative hope of finding some evidence [through discovery] that might tend to support a complaint. Further litigation in this case not only would put the parties to unnecessary expense but also, equally important, would be wasteful of judicial resources.") (internal citations omitted).

## B.

Toben asserts that the district court abused its discretion in granting Bridgestone summary judgment before ruling on her motion for class certification. This argument is without merit. The Eighth Circuit has affirmed grants of summary judgment before class certification. *See, e.g.*, *Ince v. Aetna Health Mgmt., Inc.*, 173 F.3d 672, 674 (8th Cir. 1999); *Hechenberger v. Western Elec. Co.*, 742 F.2d 453, 455 (8th Cir. 1984). Rule 23's Advisory Committee Notes similarly permit summary judgment rulings before class certification. *See* **Fed. R. Civ. P. 23(c)(1)(A) 2003 Amendments** ("Other considerations may affect the timing of the certification decision. The party opposing the class may prefer to win dismissal or summary judgment as to the individual plaintiffs without certification and without binding the class that might have been certified.").

## III.

Toben challenges the grant of summary judgment. Bridgestone argues summary judgment was proper because the undisputed evidence establishes that it did not violate the MMPA as a matter of law. This court reviews de novo the grant of

summary judgment, viewing the evidence most favorably to the nonmoving party. ***Border State Bank, N.A. v. AgCountry Farm Credit Servs., FLCA***, 535 F.3d 779, 782 (8th Cir. 2008).

The MMPA prohibits "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." **§ 407.020.1 RSMo**.

An unfair practice is any practice which—

> (A) Either—
>
>> 1.  Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or
>>
>> 2.  Is unethical, oppressive or unscrupulous; and
>
> (B) Presents a risk of, or causes, substantial injury to consumers.

**15 CSR § 60-8.020**; ***Chochorowski v. Home Depot U.S.A.***, 404 S.W.3d 220, 226 (Mo. banc 2013). "Deception is any method, act, use, practice, advertisement or solicitation that has the tendency or capacity to mislead, deceive or cheat, or that tends to create a false impression." **15 CSR § 60-9.020.1**. To establish a claim under the MMPA, a plaintiff must show that she (1) leased or purchased a product or service from defendant; (2) primarily for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property; (4) as a result of an act declared unlawful by § 407.020 RSMo. *See* **§ 407.025(1) RSMo**; ***Chochorowski v. Home Depot U.S.A., Inc.***, 295 S.W.3d 194, 197-98 (Mo. App. 2009).

The district court granted summary judgment on Toben's MMPA claim (Count 1), ruling that Bridgestone "did not engage in an unlawful practice under the MMPA."

Plaintiff contends that the "shop supplies fee" is misleading, deceptive, and unfair, because its name suggests that the entire fee goes towards supplies used in servicing a consumer's car. Instead, as defendant's in-store signs and print advertising explain, the fee is not calculated based on the precise supplies used in servicing each car, because "shop supplies (such as protective items for your vehicle, solvents, cleaners, rags, etc.) do not lend themselves to precise itemization." The signs explain the formula used to calculate the fee, and explicitly state that the fee represents costs and profits.

The practice of charging the fee or calling the fee a "shop supplies fee," is not deceptive, misrepresentative, or unfair as a matter of law. Defendant's disclosures regarding the method by which the fee is calculated and the reason for the fee are clear, simple, and straightforward. The exact amount to be charged to each customer is disclosed prior to the servicing of the vehicle, and again after the service is complete. Plaintiff insists that "to be honest," the name of the fee must reference "profit." See Pl. Memo. [Doc. # 63, p. 12]. While the MMPA requires honesty and candor, it does not require every item of merchandise, service, or fee that generates profit for a for-profit business to be titled as such. Neither the denomination of the fee as a "shop supplies fee" nor the clear and conspicuous disclosures regarding the fee have the tendency to mislead consumers. See McCall v. Monro Muffler Brake, Inc., No. 4:10-CV-269 (JAR), 2013 WL 1282306, at * 3 (E.D. Mo. Mar. 27, 2013) (rejecting an MMPA claim that a similar shop supplies fee charged at AutoTire was misleading), *motion for reconsideration denied*, 2013 WL 3418089 (July 8, 2013).[2] In the

---

[2]The *McCall* plaintiffs appealed to the Eighth Circuit. **McCall v. Monro Muffler Brake, Inc.**, 13-2769 (8th Cir. 2013). The case was dismissed after the district court approved the parties' class action settlement agreement. Case No. 4:10-cv-00269-JAR (Doc. 153).

> absence of an unlawful practice, plaintiff cannot prevail on her MMPA claim, and summary judgment on that claim will be granted.

The district court did not consider Bridgestone's causation argument.

As discussed, this finding misconstrues Toben's complaint, which includes the allegation that the shop supply fee is wholly unrelated to any supplies or services Bridgestone provides. However, the undisputed evidence shows that the fee covers costs for a variety of shop supplies. The fee, therefore, is not an unfair or deceptive practice under the MMPA. *See Huch v. Charter Commc'ns, Inc.*, 290 S.W.3d 721, 724 (Mo. banc 2009) ("Sec. 407.020 does not define deceptive practices; it simply declares unfair or deceptive practices unlawful. This was done to give broad scope to the meaning of the statute and to prevent evasion because of overly meticulous definitions. This leaves to the court in each particular instance the determination whether fair dealing has been violated."). The district court did not err in granting summary judgment on Count 1.

The district court also granted summary judgment on Toben's claim for money had and received (Count 2), relying on its finding that "the [shop supply fee] was neither deceptive nor misleading," and, therefore, was not unjust. "[T]o make a submissible case for money had and received, [a plaintiff] must establish the following elements: (1) that the defendant received or obtained possession of the plaintiff's money; (2) that the defendant thereby appreciated a benefit; and (3) that the defendant's acceptance and retention of the money was unjust." *Ward v. Luck*, 242 S.W.3d 473, 476 (Mo. App. 2008), *citing Investors Title Co., Inc. v. Hammonds*, 217 S.W.3d 288, 293-94 (Mo. banc 2007). The undisputed evidence shows that the fee covers costs for a variety of shop supplies and clearly discloses that it is intended partly for profit. The fee, therefore, is not unjust. The court did not err in granting summary judgment on Count 2.

* * * * * * *

-16-

The district court did not abuse its discretion in denying Toben merits discovery.  The court did not err in granting Bridgestone summary judgment.  The judgment is affirmed.

_____