# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-2533
_____

John Marlow

*Plaintiff - Appellant*

v.

City of Clarendon; Laura Rash, in her individual and official capacity; James L. Stinson, in his individual and official capacity

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Central
_____

Submitted: June 13, 2023
Filed: August 14, 2023
_____

Before GRUENDER, ARNOLD, and KELLY, Circuit Judges.
_____

KELLY, Circuit Judge.

John Marlow worked for the City of Clarendon, Arkansas, as a full-time police officer. After he was terminated, he sued the City, then-Chief of Police Laura Rash, and then-Clarendon Mayor James L. Stinson, alleging a violation of the Arkansas Whistle-Blower Act and retaliation for the exercise of his free speech rights. The

district court[1] granted summary judgment to the defendants on the free speech claim, and the case proceeded to trial on the whistleblower claim. The jury returned a verdict for the defendants. Marlow appeals, arguing the district court erred in its pre-trial discovery rulings, its grant of summary judgment to the defendants, and its denial of his motion for a new trial. We affirm.

I.

John Marlow began his position as a City of Clarendon police officer on April 22, 2019. On May 20, 2019, Marlow, his fellow City police officers Derrick Times and Scottie Whitcomb, and Monroe County, Arkansas, Sheriff's Deputy Ricky Thorne were involved in a high-speed pursuit of a car whose driver had fled a traffic stop. Marlow used his personal cellphone to record the pursuit, which ended when the car crashed and the front-seat passenger was ejected. Marlow, Times, and Whitcomb arrived at the scene first. Times approached the passenger—who lay seriously injured—and beat him with a flashlight. When Times learned that Marlow had cellphone footage of the flashlight incident, he asked Marlow to delete the video. Marlow complied.

The following day, Deputy Thorne asked Marlow for his dashcam video of the pursuit. Marlow believed his dashcam did not work, which is why he had used his cellphone for recording. But when he checked, he discovered his dashcam had in fact captured the pursuit and flashlight incident. Marlow gave Thorne the dashcam footage, and Thorne made a copy of it. Thorne later showed the video to a city councilman because he wanted someone who "could investigate the situation" to "look into" Times's suspected "battery" of the front-seat passenger. The city councilman recorded a short snippet of the dashcam video and told the mayor, James L. Stinson, about it. Stinson then contacted Chief of Police Laura Rash and

---

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

told her that a city councilman had received "a video of an incident that had happened in Holly Grove," Arkansas.

The City of Clarendon Police Department had a digital recording policy that prohibited the duplication, use, or release of a "Mobile Digital Recording," such as dashcam footage, "without authorization" or "approv[al]" from the Chief of Police or her designee. And after Rash learned of the councilman's video, she called Marlow and scheduled a meeting with him.

Marlow and Chief Rash met on May 29, 2019. On the advice of Deputy Thorne, Marlow surreptitiously recorded the meeting. Rash explained to Marlow that he had given a video to Thorne that "belong[ed] to the Clarendon Police Department" without his "Chief's permission." Marlow admitted that he had shared his dashcam footage with Thorne. But he asserted that he had "done [nothing] wrong," explaining that he had previously received videos from other officers of "stuff we've done, just to have . . . [and] just to reflect on." Marlow said that he gave the video to Thorne because Thorne asked for it, and doing so was "like . . . [Thorne] having a trophy."

During the meeting, Marlow also suggested that he thought Officer Times may have engaged in improper conduct. But when Rash asked Marlow why he had failed to tell her if he "thought [something] was wrong," Marlow replied, "I didn't call you because I wasn't trying to get [Times] in trouble." Both Marlow and Rash grew emotional during the meeting, and Rash ultimately told Marlow she was "sorry" that she had to terminate him.

After the meeting, Marlow encountered Officers Whitcomb and Times as he left the police station. With his audio device still recording, Marlow told Whitcomb and Times that he "did not turn in any video" to city officials. Marlow lamented that Deputy Thorne had thrown him "underneath the . . . bus," and he repeated that he gave the dashcam video to Thorne only after Thorne asked for it. Marlow insisted to Times and Whitcomb that he had "protected" them.

Four months later, Marlow sued Chief Rash and Mayor Stinson in their individual and official capacities, and the City, alleging a violation of the Arkansas Whistle-Blower Act (AWBA) and retaliation for the exercise of his free speech rights under the First Amendment and the Arkansas Constitution. Before trial, Marlow deposed Chief Rash, but she left the deposition before it was completed, and Marlow filed a motion for sanctions. Marlow also sought to depose Special Agent Michael Garlington of the Arkansas State Police, who had investigated the City's police department in light of the May 2019 flashlight incident. When Garlington refused to testify, Marlow moved to compel his deposition.

While these motions were pending, the defendants moved for summary judgment. Marlow responded by filing a motion to stay summary judgment, citing "pervasive" discovery issues related to the uncompleted depositions of Rash and Garlington. In an omnibus ruling, the district court denied Marlow's motion for sanctions, motion to compel, and motion to stay. The court also granted summary judgment in the defendants' favor on Marlow's free speech claim.[2] Marlow's whistleblower claim then proceeded to trial.

At trial, the audio recording of Marlow's meeting with Chief Rash and his subsequent encounter with Officers Times and Whitcomb was played for the jury. Marlow also testified. He told the jury that what he said on the recording was not true. Marlow explained that he "lie[d]" to Rash, Whitcomb, and Times in order "to protect [himself] and [his] family." Marlow claimed that he gave his dashcam footage to Thorne because he was concerned about the "excessive use of force [he saw] being used on an American citizen." Marlow admitted, however, that he did not express this concern to Rash, nor did he tell Rash that he gave the video to Thorne—or to the City Council by way of Thorne—to prompt an investigation.

_____

[2]The district court also granted summary judgment on the AWBA claims asserted against Chief Rash and Mayor Stinson in their individual capacities, but it retained supplemental jurisdiction over the remaining AWBA claim pursuant to 28 U.S.C. § 1367.

Rash also testified. She said that if Marlow had told her, "I think that there was wrongdoing and I have video of it," she would have "turned [the video] over" and requested that another agency conduct an investigation. Marlow acknowledged during his testimony that he had once reported misconduct by Times, and that after he did so, Rash initiated an investigation and asked Marlow to "write out a statement" about what happened. Marlow testified that he suffered no repercussions for making this report.

After a three-day trial, the jury found in favor of the City, Chief Rash, and Mayor Stinson. Marlow moved for judgment as a matter of law, see Fed. R. Civ. P. 50(b), or, in the alternative, for a new trial, see Fed. R. Civ. P. 59(a)(1)(A). The district court denied the motion. Marlow now appeals.

II.

A.

Marlow first challenges the district court's rulings on his discovery requests concerning the depositions of Chief Rash and Agent Garlington. "We review a district court's discovery rulings for abuse of discretion," and we will reverse "only where the errors amount to a gross abuse of discretion resulting in fundamental unfairness." Vallejo v. Amgen, Inc., 903 F.3d 733, 742 (8th Cir. 2018) (citations omitted).

Under Federal Rule of Civil Procedure 26(b)(1), a party "may obtain discovery regarding any nonprivileged matter that is relevant to [its] claim or defense and proportional to the needs of the case." If a party resists discovery, the requesting party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1).

Marlow argues that the district court abused its discretion in denying his motion to compel Chief Rash's deposition after she ended it early. But Marlow

never filed a motion to compel Rash to continue the deposition. In any event, Rash testified at trial as a witness for both Marlow and the defendants, and Marlow does not specify what additional evidence he could have elicited from Rash had the deposition continued, or how the shortened deposition prejudiced him at trial. See Vallejo, 903 F.3d at 746–47 (concluding that no prejudice existed where allowing the plaintiff to depose an additional witness would not have supplied the testimony the plaintiff claimed was missing). And to the extent Marlow appeals the district court's decision to deny his motion for sanctions, we see no abuse of discretion. See Holmes v. Trinity Health, 729 F.3d 817, 820 (8th Cir. 2013) (reviewing the denial of discovery sanctions for abuse of discretion and giving "substantial deference to the district court's determination"); see also MacGregor v. Mallinckrodt, Inc., 373 F.3d 923, 934 (8th Cir. 2004) ("Imposition of discovery sanctions requires an order compelling discovery [first], a willful violation of that order, and prejudice to the other party." (cleaned up)).

Marlow also claims error based on the district court's refusal to compel the deposition of Agent Garlington. According to Marlow, Garlington interviewed Rash about the police department's use of force after the May 2019 flashlight incident, and Marlow claims he "should have been able to know what Rash . . . told Garlington." But Marlow has failed to show, beyond mere speculation, how deposition testimony about that interview would have been relevant to his whistleblower and free speech claims. See Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992) (explaining that Rule 26(b) does not "allow fishing expeditions in discovery" and that a party must first make a "threshold showing of relevance" of the evidence requested). Moreover, Garlington testified at trial, and here, too, Marlow has failed to articulate how the absence of pre-trial discovery concerning this testimony resulted in "fundamental unfairness" at trial. See Moses.com v. Comprehensive Software Sys., 406 F.3d 1052, 1060 (8th Cir. 2005). We discern no abuse of discretion from the district court's discovery rulings.

B.

We turn to Marlow's argument that the district court erred in denying his motion to stay summary judgment for additional discovery. Under Federal Rule of Civil Procedure 56(d), a court may defer consideration of a summary judgment motion or allow time for discovery "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." The party seeking additional discovery must show: "(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are essential to resist the summary judgment motion." Toben v. Bridgestone Retail Operations, LLC, 751 F.3d 888, 895 (8th Cir. 2014) (cleaned up). If a party fails to carry its burden, "postponement of a ruling on a motion for summary judgment is unjustified." Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 911 (8th Cir. 1999) (quoting Humphreys v. Roche Biomedical Labs., Inc., 990 F.2d 1078, 1081 (8th Cir. 1993)). We review the denial of a Rule 56(d) motion for an abuse of discretion. Toben, 751 F.3d at 894.

Even liberally construing Marlow's motion, he failed to meet the requirements of Rule 56(d). The motion merely stated that Marlow "obviously need[ed] the ability to cross examine [Chief Rash] about the termination meeting" and that he "need[ed] the deposition of [Agent Garlington] who interviewed [Rash]." Such "unspecific assertion[s]" are insufficient under Rule 56(d). Anzaldua v. Ne. Ambulance & Fire Prot. Dist., 793 F.3d 822, 837 (8th Cir. 2015); see Elkharwily v. Mayo Holding Co., 823 F.3d 462, 472 (8th Cir. 2016) (affirming the denial of a Rule 56(d) motion where the plaintiff "had no meritorious justification for additional discovery"). And Marlow did not explain how the evidence he sought was relevant "to rebut [the defendants'] showing of the absence of a genuine issue of fact." Ray v. Am. Airlines, Inc., 609 F.3d 917, 923 (8th Cir. 2010) (quoting Humphreys, 990 F.2d at 1081). Thus, the district court did not abuse its discretion in denying Marlow's request for further discovery before granting in part the defendants' motion for summary judgment.

C.

Marlow next challenges the district court's grant of summary judgment to the defendants on his retaliation claim under the First Amendment and the Arkansas Constitution.[3] See McCullough v. Univ. of Ark. for Med. Scis., 559 F.3d 855, 865 (8th Cir. 2009) (analyzing free speech retaliation claims asserted under the Arkansas and federal constitutions under the same standard).

We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party. Martinez v. W.W. Grainger, Inc., 664 F.3d 225, 229 (8th Cir. 2011). Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Meyer v. McKenzie Elec. Coop., Inc., 947 F.3d 506, 508 (8th Cir. 2020); Fed. R. Civ. P. 56(a). To defeat summary judgment, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (cleaned up).

"A public employer 'may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech.'" McGee v. Pub. Water Supply, Dist. No. 2 of Jefferson Cnty., 471 F.3d 918, 919 (8th Cir. 2006) (quoting Rankin v. McPherson, 483 U.S. 378, 383 (1987)). To establish his free speech retaliation claim, Marlow "must prove that he engaged in protected activity, and that this activity was a substantial or motivating factor in his employer's decision to terminate him." McCullough, 559 F.3d at 865. "If [Marlow] meets this

_____

[3]Marlow argues that the district court "refused to recognize any [First Amendment] Petition Clause claim." But contrary to Marlow's assertion, no such claim was pleaded in his complaint. Thus, "while we recognize that the pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." N. States Power Co. v. Fed. Transit Admin., 358 F.3d 1050, 1057 (8th Cir. 2004).

-8-

burden, then the burden of proof shifts to [the City] to show that it would have taken the same action regardless of his free speech activities." Id.

To determine whether Marlow's speech[4] is protected, we must first determine whether he "spoke as a citizen on a matter of public concern." Hemminghaus v. Missouri, 756 F.3d 1100, 1110 (8th Cir. 2014) (quoting Garcetti v. Ceballos, 547 U.S. 410, 418 (2006)). If he did not, then his claim must fail "because no protected speech is at issue." McCullough, 559 F.3d at 866. If he did, then Marlow's "right to comment on matters of public concern must next be balanced with the employer's interest in promoting the efficiency of the public services it performs through its employees." Id. (cleaned up) (quoting Sparr v. Ward, 306 F.3d 589, 594 (8th Cir. 2002)).

"Speech that involves a matter of political, social or other concern to the community is of public concern." Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1117 (8th Cir. 1997). Marlow argues that he engaged in protected speech because a "reasonable [person] would have to find that a video of a police officer beating an innocent citizen is a matter of public concern." As a general matter, that may be true. But "[o]ur focus remains on [Marlow's] purpose in speaking." McCullough, 559 F.3d at 867. And the summary judgment record shows that Marlow's purpose in speaking here—i.e., giving the video to Deputy Thorne—was to give Thorne "a trophy" of the police pursuit. Marlow nonetheless contends that "[a]n observer would understand that [he] was attempting to report governmental misconduct to the City Council." But at summary judgment, there was no evidence that Marlow sought to convey that message when he gave the video to Deputy Thorne. Instead, the record showed that Marlow asserted the opposite, telling Whitcomb and Times that he was trying to "protect[]" them and expressly denying any intent to give the video to Thorne for investigatory purposes. The district court did not err in granting summary judgment on Marlow's free speech claim.

_____

[4]We assume, without deciding, that Marlow's turnover of the dashcam video to Deputy Thorne amounted to speech.

-9-

D.

Marlow also challenges the district court's denial of his motion for a new trial on his whistleblower claim, see Ark. Code Ann. § 21-1-601 et seq. "We review the denial of a motion for a new trial for a 'clear' abuse of discretion." Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 462 (8th Cir. 2013) (quoting Harrison v. Purdy Bros. Trucking Co., 312 F.3d 346, 351 (8th Cir. 2002)). We will reverse "only if the evidence weighs heavily against the verdict." Id.

"The AWBA protects public employees from retaliation based on the employee's good-faith reporting of the violation of a law, rule, or regulation, or the waste of public funds, to an appropriate authority." Harris v. Hutchinson, 591 S.W.3d 778, 781 (Ark. 2020); see Ark. Code Ann. § 21-1-603. However, the City, as a public employer, "has an affirmative defense to a whistle-blower lawsuit if the adverse action taken against the employee was due to employee misconduct, poor job performance, or a reduction in workforce unrelated to a [whistleblowing] communication." Entmeier v. City of Fort Smith, 506 S.W.3d 253, 257 (Ark. Ct. App. 2016) (cleaned up) (quoting Ark. Code Ann. § 21-1-604(e)(1)). Accordingly, to prevail on his AWBA claim, Marlow had to show "that he suffered an adverse action because he engaged or intended to engage in an activity protected under the Act and that such action was unrelated to his own misconduct or poor job performance." Barrows v. City of Fort Smith, 360 S.W.3d 117, 124 (Ark. 2010); see also Ark. Code Ann. § 21-1-604(c).

The jury heard Marlow say that he gave the dashcam video to Deputy Thorne to provide Thorne with a "trophy." See Ark. Code Ann. § 21-1-603(b)(2) (defining "[g]ood faith" reports under the AWBA to exclude "frivolous" communications made by a public employee). Marlow testified otherwise at trial, but it was up to the jury to determine whether Marlow made a "good faith" report of a "violation or suspected violation of a law, rule, or regulation." Id. § 21-1-603(a)(1). And while Marlow claims that his "intent" is irrelevant under the AWBA, his argument is

contrary to the plain text of the statute.  See id. § 21-1-603(b)(2); id. § 21-1-604(c).  Based on the evidence presented at trial, a reasonable jury could find that Marlow failed to satisfy his burden of proof on his whistleblower claim.

Marlow also argues that a new trial was warranted because the district court excluded the testimony of two witnesses concerning Officer Times's "serious" police misconduct in another matter and evidence about the lack of any disciplinary action following that misconduct.  But the issue at trial was whether Marlow was entitled to whistleblower protection, and the proffered evidence was not relevant to this issue.  See Fed. R. Evid. 401 (explaining that evidence is "relevant" if it tends to make the existence of any consequential fact "more or less probable").  The district court did not abuse its discretion in denying Marlow's motion for a new trial.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____