# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-1864

_____

Jeffery Weisman; Strategic Biomedical, Inc.

*Plaintiffs - Appellants*

v.

Barnes Jewish Hospital; BJC Healthcare; Washington University, also known as
Washington University School of Medicine; Thomas Cox; Richard Benzinger;
Alex Evers

*Defendants - Appellees*

_____

Physician Just Equity; American College of Legal Medicine

*Amici on Behalf of Appellant(s)*

_____

No. 24-1980

_____

Jeffery Weisman

*Plaintiff - Appellee*

Strategic Biomedical, Inc.

*Plaintiff*

v.

Washington University, also known as Washington University School of Medicine

*Defendant - Appellant*

Barnes Jewish Hospital; BJC Healthcare; Thomas Cox; Richard Benzinger; Alex Evers

*Defendant*s

_____

No. 24-1981

_____

Jeffery Weisman

*Plaintiff - Appellee*

Strategic Biomedical, Inc.

*Plaintiff*

v.

Barnes Jewish Hospital

*Defendant - Appellant*

BJC Healthcare; Washington University, also known as Washington University School of Medicine; Thomas Cox; Richard Benzinger; Alex Evers

*Defendant*s

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 15, 2025
Filed: June 10, 2025

_____

-2-

Before SMITH, SHEPHERD, and KOBES, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Dr. Jeffery Weisman initiated this action after his voluntary resignation from Washington University's (WashU) residency program, claiming that he was compelled to resign because of hostile treatment and that WashU and Barnes Jewish Hospital (BJH)—the hospital site sponsoring WashU's residency program—engaged in conduct that prevented him from transferring to another residency program. As relevant to this appeal,[1] Weisman brought suit against WashU; its employees Drs. Richard Benzinger and Alex Evers; and BJH (collectively, Defendants), alleging breach of contract, tortious interference with contract and business expectancies, fraudulent inducement, and defamation claims under Missouri law. WashU and BJH brought a counterclaim for a violation of the Missouri Computer Tampering Act (MCTA). See Mo. Rev. Stat. § 537.525. The district court[2] dismissed Weisman's tortious interference claims, his fraudulent inducement claims, and some, but not all, of his breach of contract claims, subsequently granting summary judgment in favor of BJH on the remaining breach of contract claims and the defamation claim. The district court[3] also dismissed WashU and BJH's MCTA counterclaims and Defendants' request for attorneys' fees. Weisman appeals the adverse judgment on his claims, and Defendants cross-

_____

[1]Weisman does not challenge the entry of summary judgment on his claims against Cox and BJC Healthcare, nor does he raise any issue on appeal related to his company, Strategic Biomedical.

[2]The Honorable John A. Ross, United States District Judge for the Eastern District of Missouri.

[3]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

-3-

appeal the dismissal of the MCTA claims and denial of attorneys' fees. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

We recite the facts in the light most favorable to Weisman, the nonmoving party. See Yang v. Robert Half Int'l, Inc., 79 F.4th 949, 961-62 (8th Cir. 2023) (motion to dismiss); Marlow v. City of Clarendon, 78 F.4th 410, 417 (8th Cir. 2023) (summary judgment). Weisman graduated from Louisiana State University Medical School in 2016. While in medical school, Weisman founded a successful research laboratory focused on 3D printing. Before finishing medical school, Weisman alleges, he was contacted by Evers, the Department Chair of WashU's Anesthesiology Program and asked to consider trying to match with WashU and BJH's specialized, five-year anesthesiology program. Weisman agreed to do so pursuant to a verbal agreement, the "Lab-Residency Contract." According to Weisman, the Lab-Residency Contract obligated Weisman to relocate his 3D-printing lab to St. Louis and WashU and BJH to "train him for five years," among other things. Weisman then matched into WashU's anesthesiology program and relocated his lab. Like all residents, Weisman accepted the terms of a "Memorandum of Appointment to House Staff" (the MOA) circulated by BJH. The MOA incorporated by reference two documents relevant to this appeal: (1) the "Graduate Medical Education Consortium" (the Consortium Agreement) between WashU and BJH and (2) the "Common Program Requirements" of the Accreditation Council for Graduate Medical Education (ACGME).

Weisman then participated in the residency program, but he voluntarily resigned in 2018 based, in part, on the deteriorating relationship he had with his supervisors, Benzinger and Evers. He claimed that he resigned pursuant to an oral "Separation Agreement," through which he agreed to voluntarily leave the program on the condition that Evers and Benzinger (and by extension, WashU and BJH) would agree to "cooperate with other programs" and provide Weisman with "a good recommendation letter" to facilitate his transfer. Relying on this agreement,

Weisman left and applied to several residency programs, but none of his applications were successful. According to Weisman, he was not accepted to any other residency program because Defendants did not provide the required academic records in the form of a summative evaluation documenting his progress within WashU's residency program and Evers and Benzinger made defamatory comments about him to inquiring institutions.

Weisman filed this diversity action in federal court alleging, as relevant here, claims of breach of contract against BJH and WashU; tortious interference with contract and business expectancies against Evers and Benzinger; and fraudulent inducement and defamation against all Defendants. All Defendants filed motions to dismiss, which the district court granted in part and denied in part. The court dismissed all claims pertaining to the Lab-Residency Contract, finding them barred by the statute of frauds based on Weisman's allegation that the contract required WashU and BJH to employ him "for five years" and the absence of a written contract. It next considered Weisman's tortious interference claims against Evers and Benzinger, but only as they applied to the Separation Agreement because Weisman narrowed the scope of his claim in his opposition to the motion to dismiss, specifically telling the court not to consider the MOA, and the statute of frauds rendered the Lab-Residency Contract unenforceable. Ultimately, the court dismissed the tortious interference claims because it found that Weisman had merely recast his breach of contract claims as tort claims, which was impermissible. In so doing, the court noted that the other avenues for dismissal articulated by the Defendants raised factual questions that could not be resolved on a motion to dismiss, including whether Benzinger and Evers making "allegedly erroneous and malicious evaluations f[e]ll within the scope of" their employment at WashU. Finally, the court dismissed the fraudulent inducement claims because Weisman alleged non-actionable future promises.

Defendants then moved to amend their answers, each adding a counterclaim against Weisman for a violation of the MCTA based on Weisman's unauthorized use of Benzinger's email. According to Defendants, Weisman accessed and

searched Benzinger's WashU e-mail account without authorization. The district court granted the Defendants' motion and also granted Weisman leave to file his operative second amended complaint. After discovery, Defendants moved for summary judgment on Weisman's remaining claims, which the district court granted in full. The court held that Weisman failed to create a genuine dispute of fact as to his breach of contract claim against BJH because Weisman produced no evidence that BJH "w[as] involved in Weisman's educational training, evaluations, or alleged harassment . . . . Rather, all obligations regarding evaluation and instruction . . . fell to Wash[]U employees." Thus, as a matter of law, Weisman could not establish that BJH breached the MOA. The court also granted summary judgment on Weisman's defamation claims because "discovery [did] not produce[] evidence that Drs. Evers, Benzinger or anyone else stated that Weisman failed rotations," nor were any of the alleged statements defamatory or false.

Before the district court could rule on the MCTA counterclaims, Weisman sent a cashier's check payable to BJH and WashU in the amount of their requested compensatory damages, including prejudgment interest. Weisman then moved to dismiss the MCTA counterclaims for lack of subject matter jurisdiction, arguing the claims were moot because he tendered payment in full. Defendants opposed the motion, arguing that they still had outstanding claims for attorneys' fees and costs. The district court held that the claims were moot, noting that the court could still adjudicate a motion for attorneys' fees separately, but because Weisman tendered full payment, "no case or controversy as to the merits remain[ed]." Weisman now appeals the dismissal of his tortious interference, fraudulent inducement, and breach of the Lab-Residency Contract claims and the grant of summary judgment in favor of BJH on the MOA breach of contract claim. Defendants cross-appeal the dismissal of their MCTA counterclaims.

II.

Weisman first challenges the district court's grant of summary judgment in favor of BJH, asserting that BJH breached the MOA by failing to provide an

environment free from harassment and refusing to release his summative evaluation.[4]  "We review a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party."  Marlow, 78 F.4th at 417.  "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  Helmig v. Fowler, 828 F.3d 755, 760 (8th Cir. 2016) (quoting Fed. R. Civ. P. 56(a)).

"As a federal court sitting in diversity jurisdiction, we apply the law that the forum state would apply."  Winthrop Res. Corp. v. Stanley Works, 259 F.3d 901, 904 (8th Cir. 2001).  To prevail on a breach of contract claim under Missouri law, Weisman "must prove that: (1) a contract existed . . . ; (2) [Weisman] had certain rights and [BJH] had certain obligations or duties under the contract; (3) [BJH] breached the contract; and ([4]) [Weisman] suffered damages."  Newell Rubbermaid, Inc. v. Efficient Sols., Inc., 252 S.W.3d 164, 176 (Mo. Ct. App. 2007).

The Consortium Agreement, which is incorporated by reference in the MOA, places a specific duty on the "Program Director," defined as the Associate Dean for Graduate Medical Education for WashU, to "provide timely verification of residency/fellowship education and summative Milestone assessments . . . for residents and clinical fellows who have expressed an interest to leave a program prior to completion of training to pursue an opportunity at another institution."  The Consortium Agreement also places the responsibility of selecting, disciplining, evaluating, and promoting residents purely on WashU and its Program Director.  But

---

[4]BJH argues that Weisman has waived his argument about its failure to provide a summative evaluation, claiming that Weisman failed to raise the issue before the district court.  But Weisman expressly alleged in his Complaint that the MOA "required W[ash]U-BJH to 'provide objective assessments of performance' for Weisman and other residents; 'document progressive resident performance improvement;' and make 'the evaluations of resident performance . . . accessible for review by the resident.'"  The district court also acknowledged the summative evaluation in its summary judgment ruling.  Weisman has thus preserved this issue on appeal.

the Consortium Agreement also states that WashU and BJH agreed to ensure that the residency program met the standards of the ACGME, which is restated in the MOA. See R. Doc. 1-1, at 1 ("The training program will meet the standards of the Essentials of Accredited Residency as approved by the [ACGME]."). It is this general commitment that, in Weisman's view, creates a duty that BJH breached, as the AGCME requires residency programs to maintain an "environment that is free from mistreatment" and program directors to provide summative evaluations for transferring residents.

The parties' general commitment to adhere to the ACGME does not override the "clear and unambiguous" delegation of duties to WashU regarding resident management contained in both the MOA and Consortium Agreement. See L & K Realty Co. v. R. W. Farmer Constr. Co., 633 S.W.2d 274, 280 (Mo. Ct. App. 1982). The plain language of the Consortium Agreement and MOA require WashU's Program Director to provide summative evaluations and manage the resident program, not BJH. R. Doc. 1-1, at 10-11 ("An evaluation file shall be maintained by the Program Director."); R. Doc. 278-2, at 14-15 (noting that "Program Directors must also provide timely verification of residency/fellowship education" and "[r]ecommendations about promotion . . . are determined by the [Clinical Competency Committee] . . . with final decisions by the Program Director."). Additionally, the ACGME imposes the duty of providing a summative evaluation on an institution's *Program Director*. R. Doc. 296-21, at 9-10 ("A program director must provide timely verification of residency education and summative performance evaluations for residents who may leave the program prior to completion."). BJH had no obligation to supervise the residency program or maintain resident records under the MOA, Consortium Agreement, or ACGME standards. Thus, BJH could not have been in breach as it had no duty. Cf. Greentree Props., Inc. v. Kissee, 92 S.W.3d 289, 293 (Mo. Ct. App. 2002) ("When performance of a duty under a

contract is due[,] any non-performance is a breach."). The district court did not err by granting summary judgment in favor of BJH.[5]

## III.

Weisman next challenges the dismissal of his breach of contract claim pertaining to the Lab-Residency Contract; his tortious interference claims against Benzinger and Evers; and his fraudulent inducement claims relating to the Separation Agreement. This Court "review[s] de novo a district court's decision granting a motion to dismiss for failure to state a claim." Yang, 79 F.4th at 961-62.

## A.

Weisman alleged in his second amended complaint that he, WashU, and BJH entered into "a multi-faceted contract that was in part written and in part verbal." Through this "Lab-Residency Contract," Weisman promised to relocate his lab to St. Louis, affiliate with WashU and BJH, and agreed that he "would perform the obligations, and receive the benefits, normally involved in such research affiliations." In return, the Defendants would enroll Weisman in the residency program and "train him for five years." The district court dismissed Weisman's claim, holding that any alleged Lab-Residency Contract was barred by the statute of frauds and that, contrary to Weisman's assertions, BJH and WashU were not engaged in a partnership at will, making the statute of frauds applicable. Weisman now argues he fully performed his side of the bargain, sufficient to remove the Lab-Residency Contract from the statute of frauds.[6]

---

[5]We do not reach the district court's alternative holding that the educational malpractice doctrine precludes Weisman's claim.

[6]WashU argues that Weisman has waived this argument, but Weisman argued against the application of the statute of frauds below, albeit on other grounds. Because neither party disputes the facts related to this issue and Weisman's full performance argument was "encompassed in a more general argument previously raised and no new evidence is presented on appeal," this Court can and shall consider

Under the statute of frauds:

> No action shall be brought . . . upon any agreement that is not to be performed within one year from the making thereof, unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith . . . .

Mo. Rev. Stat. § 432.010. "The statute of frauds does not prevent recovery on an oral contract if one party has fully performed." Urologic Surgeons, Inc. v. Bullock, 117 S.W.3d 722, 727 (Mo. Ct. App. 2003). But, if an "agreement expressly provides that employment shall run for longer than one year, the statute of frauds . . . appl[ies]" because that agreement is not "capable of full performance within one year." Id. at 728. Further, "a contract is not unenforceable under the statute of frauds if it could *possibly* be performed in compliance with its terms within one year, even though the actual performance is expected to continue over a much longer period." Crabb v. Mid-Am. Dairymen, Inc., 735 S.W.2d 714, 716 (Mo. 1987) (en banc) (emphasis added). "Thus[,] an oral contract to work for a person for two years would violate the statute, but a parol undertaking to hire a man . . . for the rest of his life would not" because it is *possible* for the man to die within a year of making the bargain, fully performing the oral agreement by working "for the rest of his life" and removing the agreement from the statute of frauds. Id. For example, in Satterfield v. Missouri Dental Ass'n, an employee brought a breach of contract claim based on her employer's failure to retain her until her retirement date, which allegedly occurred over a year from the date of the oral agreement. 642 S.W.2d 110, 111 (Mo. Ct. App. 1982). The court held that the statute of frauds barred her claim because "[t]he contract on which [she] based her action was one for her continued employment until . . . a definite future date well beyond the limitation of one year." Id. at 112. The employee also argued that the statute of frauds did not apply because she tendered full performance by "render[ing] services from the date of the agreement until her termination," but the court determined that her termination

---

his new argument against the application of the statute of frauds as a purely legal issue. United States v. Hirani, 824 F.3d 741, 751 (8th Cir. 2016).

"d[id] not convert partial performance into full performance[,] . . . remov[ing] the case from the requirements of the statute of frauds." Id.

So, too, is the case here. Weisman's own allegations in his second amended complaint foreclose any plausible claim for relief because of the statute of frauds. He expressly avers that the Lab-Residency Contract promised that WashU and BJH would "train him for five years" in exchange for Weisman relocating his lab, providing research, and performing residency obligations during said period. The Lab-Residency Contract was, essentially, an employment contract for a definite term of five years which, without a writing, is unenforceable by virtue of the statute of frauds. Weisman's argument that he fully performed upon relocating his lab and enlisting in the residency program does not place the agreement outside the statute of frauds. In his own words, Weisman was required to "perform the obligations . . . normally involved in such research affiliations." Those obligations did not cease upon Weisman's relocation of his laboratory to WashU—they continued until Weisman completed the program. Weisman voluntarily resigned from the program in 2018, three years before he could have fully performed his part of the bargain. As such, Weisman only partially performed his half of the alleged Lab-Residency Contract, and his departure "does not convert partial performance into full performance" sufficient to remove the contract from the statute of frauds. Satterfield, 642 S.W.2d at 112. The district court did not err in granting the motion to dismiss, as the Lab-Residency Contract was unenforceable under the statute of frauds.

B.

Weisman next challenges the dismissal of his tortious interference claims against Evers and Benzinger. As a preliminary matter, Weisman argues that the district court "oddly limited" his claims to only the Lab-Residency Contract and Separation Agreement, but, in fact, Weisman himself narrowed this claim while opposing the motion to dismiss. See Appellant Br. 47; R. Doc. 53, at 15 (stating that "[t]he contracts interfered with were the Lab-Residency and Separation

[A]greements" and the "expectation[s]" related to these alleged agreements). He cannot now claim error when "the court proceeded in a way that [he] . . . requested." See United States v. Corn, 47 F.4th 892, 895 (8th Cir. 2022). Thus, the district court properly limited its review to the Lab-Residency Contract and Separation Agreement.

To prove tortious interference under Missouri law, Weisman had to plausibly allege:

> (1) A contract or a valid business relationship [o]r expectancy (not necessarily a contract); (2) [Benzinger and Evers'] knowledge of the contract or relationship; (3) Intentional interference by [Benzinger and Evers] inducing or causing a breach of the contract or relationship; (4) The absence of justification; and, (5) Damages resulting from [Benzinger and Evers'] conduct.

Fischer, Spuhl, Herzwurm & Assocs., Inc. v. Forrest T. Jones & Co., 586 S.W.2d 310, 315 (Mo. 1979) (en banc). Because the district court concluded that the Lab-Residency Contract was unenforceable under the statute of frauds, it did not consider whether Evers and Benzinger tortiously interfered. But under Missouri law, "[a] reasonable expectation of economic advantage or commercial relation will support a claim for wrongful interference with business expectancy even in the face of an unenforceable contract." Kantel Commc'ns, Inc. v. Casey, 865 S.W.2d 685, 690 (Mo. Ct. App. 1993). Thus, the district court erred by not considering this claim in light of the unenforceable Lab-Residency Contract.

This Court, however, "may affirm a judgment on any ground supported by the record." Adam & Eve Jonesboro, LLC v. Perrin, 933 F.3d 951, 958 (8th Cir. 2019). Under Missouri law, "[a]n action for tortious interference with a business expectancy will lie against a third party only." Zipper v. Health Midwest, 978 S.W.2d 398, 419 (Mo. Ct. App. 1998). "Where the individual being sued is an officer or agent of the defendant corporation, the officer or agent acting for the corporation is the corporation for purposes of tortious interference." Id. Thus, Evers and Benzinger were not third parties for purposes of tortious interference if they were acting "by

-12-

virtue of the[ir] employment and in furtherance of the business or interests of" WashU.  See Md. Cas. Co. v. Huger, 728 S.W.2d 574, 579 (Mo. Ct. App. 1987).

Weisman expressly alleged that Evers and Benzinger were his supervisors in the residency program.  Weisman also does not challenge the district court's conclusion that part of Evers and Benzinger's duties as supervisors included "reviewing [his] performance and communicating with other programs" after Weisman sought to transfer.  When ruling on the motion to dismiss, the district court noted that it could not resolve the tortious interference claim because Weisman plausibly alleged that Evers and Benzinger made false and defamatory statements to other institutions, sufficient to remove them from the scope of their employment with WashU.  This Court now has the benefit of reviewing the record in light of discovery, which did "not produce[] evidence that Drs. Evers, Benzinger or anyone else stated [to another medical institution] that Weisman failed rotations" or that any statement made was actually false.  Because Weisman did not appeal the district court's holding that Evers and Benzinger did not make actionable defamatory comments to other institutions, Evers and Benzinger were acting "by virtue of the[ir] employment and in furtherance of the business . . . of [WashU]" when reviewing and commenting on Weisman's residency performance.  See Huger, 728 S.W.2d at 579. As agents of WashU, Evers and Benzinger were not third parties to the Lab-Residency Contract or the Separation Agreement and, thus, could not tortiously interfere with those contracts as a matter of law.  See Zipper, 978 S.W.2d at 419; Farrow v. Saint Francis Med. Ctr., 407 S.W.3d 579, 602-03 (Mo. 2013) (en banc) (holding that a nurse could not maintain a tortious interference claim against her supervising doctor as the doctor was an agent of the hospital, not a third party).  The district court did not err in dismissing Weisman's tortious interference claims.

C.

Finally, Weisman's fraudulent inducement claims pertaining to the Separation Agreement fail because the district court determined that the Separation Agreement did not exist, a finding unchallenged on appeal.  One of the elements of fraudulent

inducement requires a plaintiff to prove that he "reasonably relied on the [false] representations in signing the . . . *agreement*." Trotter's Corp. v. Ringleader Rests., Inc., 929 S.W.2d 935, 939 (Mo. Ct. App. 1996) (emphasis added). Additionally, under Missouri law, "[a] contract involving fraud in the inducement affords the victimized party a choice of remedies: to rescind the contract or to enforce it and sue independently for the damages resulting from the fraud." Roth v. La Societe Anonyme Turbomeca Fr., 120 S.W.3d 764, 772 (Mo. Ct. App. 2003). Unlike the merely unenforceable Lab-Residency Contract, discovery produced no evidence of the *existence* of the alleged Separation Agreement. See R. Doc. 318, at 10-12 (finding "no evidence of a verbal separation contract," "no mutual agreement[,] and no meeting of the minds"). No Defendant could have fraudulently induced Weisman to enter into a contract which, as a matter of law, did not exist. Moreover, without a contract, Weisman has no remedy under Missouri law. We discern no error by the district court in dismissing the fraudulent inducement claims.

IV.

WashU and BJH cross-appeal the dismissal of their counterclaims for lack of subject matter jurisdiction. The MCTA gives a district court discretion to "award reasonable attorney[s'] fees to a prevailing plaintiff." Mo. Rev. Stat. § 537.525(2). Weisman, however, tendered full payment to all Cross-Appellants for their MCTA counterclaims, totaling $8,500 (including prejudgment interest). Thus, the district court dismissed the counterclaims for lack of subject matter jurisdiction as "BJH and W[ash]U ha[d] obtained full compensatory relief," making the counterclaims moot. "We review de novo a district court's grant of a motion to dismiss for lack of jurisdiction." Doe v. Nixon, 716 F.3d 1041, 1051 (8th Cir. 2013).

"When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot." Ali v. Cangemi, 419 F.3d 722, 723 (8th Cir. 2005) (en banc) (alteration in original) (citation omitted). "[An] interest in attorney[s'] fees is . . . insufficient to create

-14-

an Article III case or controversy where none exists on the merits of the underlying claim." Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990). While an offer of payment does not moot a case "because a defendant may revoke an offer or fail to follow through, . . . . a tender of the money due" changes the analysis, as "[s]uch a tender gives the plaintiff all the relief []he could receive, and as a result it moots any claim for damages." Jarrett v. United States, 79 F.4th 675, 678 (6th Cir. 2023).

Cross-Appellants BJH and WashU argue that they did not obtain "complete relief as prevailing parties provided for in the MCTA" because they did not receive attorneys' fees. Importantly, though, neither party disputes that Weisman's tender of payment fully satisfied BJH and WashU's request for compensatory damages, and neither Defendant separately moved for attorneys' fees. Without an amount in controversy, "the cause of action . . . ceased to exist," and the district court lacked jurisdiction to enter judgment in favor of the Cross-Appellants. See California v. San Pablo & T.R. Co., 149 U.S. 308, 313 (1893).

V.

For the foregoing reasons, we affirm the judgments of the district court.

_____